COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Elder and Lemons
Argued at Chesapeake, Virginia


GARY ALLEN REEL
                                           OPINION BY
v.   Record No. 0168-99-1             JUDGE LARRY G. ELDER
                                         JANUARY 4, 2000
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG
                     AND COUNTY OF JAMES CITY
                  Samuel Taylor Powell, III, Judge

          David Holland (David Holland's Law Group,
          L.L.C., on brief), for appellant.

          Steven A. Witmer, Assistant Attorney General
          (Mark L. Earley, Attorney General, on brief),
          for appellee.


     Gary Allen Reel (appellant) appeals from his bench trial

conviction for driving after having been declared a habitual

offender, second or subsequent offense, pursuant to Code

§ 46.2-357(B)(3). On appeal, he contends the mere fact that his

windshield bore a pink rejection sticker indicating his vehicle

failed to pass an official state inspection did not provide

reasonable suspicion of criminal activity necessary to validate

the stop of his vehicle. We hold that appellant's operation of

a vehicle displaying a pink rejection sticker provided

reasonable suspicion that he was committing a traffic

infraction, thereby justifying an investigatory stop.

Therefore, we affirm appellant's conviction.

I.

FACTS

The relevant facts are not in dispute. At about 1:00 p.m. on August 3, 1998, Officer Riley of the Williamsburg Police Department observed appellant operating a vehicle on Henry Street in the City of Williamsburg. On appellant's windshield, Riley noticed a pink rejection sticker. Other than seeing the pink rejection sticker, Riley observed no violations of motor vehicle or other laws. Prior to executing the stop, Riley did not know when the sticker had been issued and noticed nothing, such as fading or curling, to indicate the sticker was old or otherwise invalid.

Upon executing the stop, Officer Riley learned that the vehicle had received the rejection sticker on "7-29-98 for tires and brakes." He also discovered that appellant was a habitual offender.

Appellant moved to suppress evidence of his habitual offender status on the ground that the stop was not supported by reasonable suspicion or probable cause. He admitted that if the court denied the motion to suppress, he had no defense. The trial court denied the motion and convicted appellant of the charged offense.

## II.

## ANALYSIS

At a hearing on a defendant's motion to suppress, the Commonwealth has the burden of proving that a warrantless search or seizure did not violate the defendant's Fourth Amendment rights. See Simmons v. Commonwealth, 238 Va. 200, 204, 380 S.E.2d 656, 659 (1989). On appeal, we view the evidence in the light most favorable to the prevailing party, granting to it all reasonable inferences fairly deducible therefrom. See Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991); see also Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1659, 134 L. Ed. 2d 911 (1996). We review de novo the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case. See Shears v. Commonwealth, 23 Va. App. 394, 398, 477 S.E.2d 309, 311 (1996); see also Ornelas, 517 U.S. at 699, 116 S. Ct. at 1659.

Under well established Fourth Amendment principles, "[t]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" United States v. Sokolow, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585, 104 L. Ed. 2d 1 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884, 20 L. Ed. 2d 889 (1968)). "Actual proof that criminal activity is afoot is not necessary . . . ."

Harmon v. Commonwealth, 15 Va. App. 440, 444, 425 S.E.2d 77, 79 (1992). A police officer may conduct an investigatory stop of a motor vehicle if he has at least "articulable and reasonable suspicion" that the operator is unlicensed, the vehicle is unregistered, or the vehicle or an occupant is otherwise subject to seizure for violating the law. See Murphy v. Commonwealth, 9 Va. App. 139, 143, 384 S.E.2d 125, 127 (1989) (citing Delaware v. Prouse, 440 U.S. 648, 663, 99 S. Ct. 1391, 1401, 59 L. Ed. 2d 660 (1979)). "There are no bright line rules to follow when determining whether a reasonable and articulable suspicion exists to justify an investigatory stop. Instead, the courts must consider 'the totality of the circumstances--the whole picture.'" Hoye v. Commonwealth, 18 Va. App. 132, 135, 442 S.E.2d 404, 406 (1994) (quoting Sokolow, 490 U.S. at 8, 109 S. Ct. at 1585).

The Virginia Code provides that it is "unlawful for any person to use or have as equipment on a motor vehicle operated on a highway any device or equipment mentioned in § 46.2-1002 which is defective or in unsafe condition." Code § 46.2-1003. The equipment mentioned in Code § 46.2-1002 includes "any . . . equipment for which approval is required by any provision of this chapter." That chapter sets standards for a wide range of equipment, including tires and brakes. See, e.g., Code §§ 46.2-1041 to -1046 (tires), 46.2-1066 to -1071 (brakes).

Motor vehicles registered in Virginia and operated on a highway within the state must receive a complete inspection at an official inspection station every twelve months. See Code §§ 46.2-1157, 46.2-1158. The Code further provides as follows:

> No owner or operator shall fail to submit a motor vehicle, trailer, or semitrailer operated on the highways in this Commonwealth to such inspection or fail or refuse to correct or have corrected in accordance with the requirements of this title any mechanical defects found by such inspection to exist.

>     \*     \*     \*     \*     \*     \*     \*

> Each day during which such motor vehicle, trailer, or semitrailer is operated on any highway in this Commonwealth after failure to comply with this law shall constitute a separate offense. However, no penalty shall be imposed on any owner or operator for operation of a motor vehicle, trailer, or semitrailer after the expiration of a period fixed for the inspection thereof, over the most direct route between the place where such vehicle is kept or garaged and an official inspection station, for the purpose of having it inspected pursuant to a prior appointment with such station.

>     \*     \*     \*     \*     \*     \*     \*

> [A] violation of this section constitutes a traffic infraction.

Code § 46.2-1157.

The only reference to rejection stickers contained in the Code appears in §§ 46.2-1158 and 46.2-1167. Code § 46.2-1158 provides that "[a] rejection sticker shall be valid for fifteen calendar days beyond the day of issuance. A complete inspection

shall be performed on any vehicle bearing an expired rejection sticker."  Id.  However, "[a] reinspection of a rejected vehicle by the same station during the period of validity of the rejection sticker on such vehicle . . . need only include an inspection of the item or items previously found defective unless there is found an obvious defect that would warrant further rejection of the vehicle."  Id.  Code § 46.2-1167 merely lists the fee to be charged for reinspection of a rejected vehicle.

Subject only to limited exception,[1] neither Code § 46.2-1158, § 46.2-1167, nor any other statute permits operation of a vehicle with defective equipment, whether the defect is detected during an official state inspection or in some other fashion.  See Code §§ 46.2-1002, 46.2-1003.  Any law enforcement officer who observes a defect in a vehicle, such as a vehicle which "is not equipped with proper . . . brakes" or other specified equipment or "is otherwise unsafe to be operated," "shall . . . take possession of the registration card, license plates, and decals of any such vehicle" and retain them for fifteen days unless the owner corrects the defects or obtains a new safety inspection sticker.  Code § 46.2-1000.

---

[1] Code § 46.2-1001 permits a qualified law enforcement officer who discovers a defect in a vehicle on the highway to authorize its "operation only to the nearest place where repairs can be safely effected" if he determines that "such operation is less hazardous to the public than to permit the motor vehicle, trailer, or semitrailer to remain on the highway."

Further, the Virginia Administrative Code provides that, upon

rejection of a vehicle during an official state inspection,

> [t]he operator of the rejected vehicle shall
> be informed of the following:
> 1. The rejection sticker is valid for
> 15 days in addition to the date of
> inspection.
> 2. The rejection sticker places no
> travel restriction on operation of the
> vehicle and is issued in lieu of an approval
> sticker.
> 3. <u>The vehicle operator is legally
> responsible for any defect if operated on
> the highway and may be subject to a traffic
> summons for any existing equipment
> violation</u>.

19 Va. Admin. Code 30-70-60 (emphasis added).

Pursuant to Virginia's statutory scheme, a vehicle bearing

a rejection sticker has been determined to have defective

equipment, <u>see</u> Code § 46.2-1158, and the vehicle's owner or

operator is under a legal duty imposed by Code § 46.2-1157 and

other provisions of the motor vehicle laws to have the vehicle

repaired before operating it on any highway in the Commonwealth.

When an officer sees a vehicle being operated with a rejection

sticker, he knows the vehicle has been determined to have

defective equipment. We hold that this knowledge provides

reasonable suspicion for the officer to conduct an investigatory

stop of the vehicle to determine whether the defective equipment

has been repaired.

Appellant contends that our holding in <u>Commonwealth v.

Spencer</u>, 21 Va. App. 156, 462 S.E.2d 899 (1995), controls the

outcome of this case. We disagree. Spencer involved the stop of an automobile which bore Virginia license plates but no city or county decal. See id. at 158, 462 S.E.2d at 900. The evidence established that the vehicle was being operated in Richmond, which required all cars registered there to display city decals, but that "the officers knew that other cities and counties in the state do not require decals." See id. at 159-60, 462 S.E.2d at 901. The officers made no effort before executing the stop to determine whether the vehicle was registered in a jurisdiction requiring a decal, and the trial court found that determining the locality of registration was a question that could have been "easily resolved by the officer calling in" prior to the stop. See id. at 159, 462 S.E.2d at 901. Further, no evidence established that the decal served a safety related purpose, only that the absence of such a decal might or might not violate a local ordinance. Under the totality of the circumstances, we held that the officers lacked reasonable suspicion to execute a traffic stop.

Here, by contrast, Virginia law requires that all cars registered and operated in Virginia undergo an annual safety inspection, regardless of the city or county in which the owner resides. A vehicle bearing a rejection sticker has expressly been found to have a mechanical defect of such magnitude that the legislature has declared the vehicle unsafe to operate until the defect is repaired. Further, the record contains no

indication that a less intrusive means of discovering whether the defect had been repaired was available to the investigating officer. The vehicle's driver, by contrast, had readily available the means to communicate that information to the officer--by obtaining a valid inspection sticker upon the determination of an official inspection station that all mechanical defects had been corrected. We hold, under the totality of the circumstances, that until appellant obtained a valid inspection sticker, the prior express finding of a safety violation demonstrated by the rejection sticker provides articulable suspicion necessary to justify a brief investigatory stop.

Appellant contends that such an investigatory stop is unconstitutional because "a vehicle can be legally driven with a rejection sticker." He cites Code § 46.2-1157, which he says "allows operation of a motor vehicle directly [between] 'the place where such vehicle is kept or garaged and an official inspection station for the purpose of having it inspected pursuant to prior appointment with such station.'" We agree with appellant that a vehicle can be driven legally with a rejection sticker, but appellant misconstrues this provision.

The Code and related regulations, as outlined above, provide that a rejection sticker is valid for fifteen days after the date of the inspection and that the sticker is issued in lieu of an approval sticker and places no travel restriction on

the vehicle.  See Code § 46.2-1157; 19 Va. Admin. Code 30-70-60.

Any travel restrictions arise from defects in the vehicle's

equipment.  See Code § 46.2-1157; 19 Va. Admin. Code 30-70-60.

Once an inspection or rejection sticker has expired, however,

any operation of the vehicle constitutes a traffic infraction,

regardless of whether any equipment is defective and regardless

of the driver's destination.  The Code merely provides that no

penalty may be imposed against a driver whose prior inspection

or rejection sticker has expired if that driver is traveling

"over the most direct route between the place where such vehicle

is kept or garaged and an official inspection station, for the

purpose of having it inspected pursuant to a prior appointment

with such station."  Code § 46.2-1157.  A driver, however,

remains responsible for any equipment violations.

The fact that a vehicle displaying a rejection sticker may

be operated legally--if driven after the defective equipment has

been repaired and before the rejection sticker has expired--does

not mean a rejection sticker fails to provide reasonable

suspicion that the driver is committing a traffic infraction.

As set out above, when an officer sees a vehicle being operated

with a rejection sticker, he knows the vehicle has been

determined to have defective equipment, and this knowledge

provides reasonable suspicion for the officer to conduct an

investigatory stop to determine whether the defective equipment

has been repaired.

For these reasons, we hold that the stop of appellant's vehicle did not violate the Fourth Amendment and that the trial court properly denied the motion to suppress.  Therefore, we affirm appellant's conviction.

<u>Affirmed</u>.