COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Humphreys and Senior Judge Fitzpatrick
Argued at Alexandria, Virginia


ROBERT WILLIAM EBERTH
                                                            OPINION BY
v.        Record No. 0406-05-4                     JUDGE ROBERT J. HUMPHREYS
                                                           DECEMBER 5, 2006
COUNTY OF PRINCE WILLIAM


            FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                            Richard B. Potter, Judge

            Robert W. Eberth, *pro se*.

            (W. Michael Phipps, Assistant Commonwealth's Attorney, on brief),
            for appellee.  Appellee submitting on brief.


        Appellant Robert William Eberth ("Eberth") appeals his conviction for violating Prince

William County Code § 13-322(a)(1), which forbids any individual from parking a vehicle not in

compliance with state inspection standards on a "public highway."  For the reasons that follow,

we hold that the Prince William County ordinance is invalid to the extent that it authorizes the

local government to issue a parking citation to an uninspected vehicle parked in the private

parking lot of an apartment building complex.  Accordingly, we reverse the judgment below and

dismiss the underlying citation.

                                    BACKGROUND

        On August 25, 2004, Officer Patricia Biller, a parking enforcement officer, entered the

parking lot of an apartment complex located in Prince William County.[1]  In one of the parking

spaces, she discovered a burgundy car bearing Virginia plates, a January 2001 registration

_____

        [1] At the time, the complex contained seven hundred and thirty-two individual rental
apartments.

sticker, and an inspection sticker that expired in December of 1999. Officer Biller issued a parking violation summons, citing Eberth for parking a vehicle with an expired inspection sticker on a "public highway."

During the resulting bench trial, Eberth moved to dismiss the citation. Although Code § 46.2-1307 permits localities to define certain private roadways as "highways" for law enforcement purposes, Eberth argued that the ordinance was invalid because the County impermissibly "expand[ed] [the] authority" granted to it by the statute. Eberth reasoned that, because Code § 46.2-1307 only permits localities to designate as "public" roadways in areas containing one hundred or more "lots," the County exceeded the scope of this statute when it defined "public highway" to also encompass private roadways in areas containing one hundred or more "dwelling units." Eberth further contended that Code § 46.2-1307 violates the Equal Protection Clause of the Fourteenth Amendment and that the County ordinance was a "nullity" because the laws of the Commonwealth prohibit uninspected vehicles from being operated— rather than parked—on public highways.

The trial court denied the motion to dismiss and found the evidence sufficient to establish a violation of the county ordinance. This appeal followed.

ANALYSIS

On appeal, Eberth raises three separate assignments of error. First, Eberth contends that Code § 46.2-1307, which vests localities with the authority to define certain private roads as "highways" for law-enforcement purposes, violates the Equal Protection Clause of the Fourteenth Amendment. Second, Eberth argues that the Prince William County ordinance is invalid because it impermissibly extends the scope of the authority granted to the County under Code § 46.2-1307. Third, Eberth contends that the ordinance is a "nullity" because the laws of

the Commonwealth only require a vehicle to display an inspection sticker when it is being "operated."

## A. Statutory Scheme

According to Code § 46.2-1157, "[n]o owner or operator shall fail to submit a motor vehicle . . . operated on the highways in this Commonwealth to [an] inspection [of its mechanism and equipment]." Any vehicle "required to be inspected . . . shall be reinspected within twelve months of the month of the first inspection and at least once every twelve months thereafter." Code § 46.2-1158. Failure to submit a vehicle for a required inspection "constitutes a traffic infraction." Code § 46.2-1157; see also Reel v. Commonwealth, 31 Va. App. 262, 269, 522 S.E.2d 881, 884 (2000) ("Virginia law requires that all cars registered and operated in Virginia undergo an annual safety inspection, regardless of the city or county in which the owner resides.").[2]

In a related provision, Code § 46.2-1163 provides that a valid inspection sticker "shall be displayed on the windshield of such vehicle . . . at all times when it is operated on the highways in the Commonwealth and until such time as a new inspection period shall be designated and a new inspection sticker issued." A first violation of this provision constitutes a Class 3 misdemeanor, and any subsequent conviction constitutes a Class 1 misdemeanor. See Code § 46.2-1171; see also Fisher v. Commonwealth, 42 Va. App. 395, 402-03, 592 S.E.2d 377, 380-81 (2004) (discussing statutory scheme); Reel, 31 Va. App. at 266, 522 S.E.2d at 883 (same).

---

[2] A "traffic infraction" is "a violation of law punishable as provided in § 46.2-113, which is neither a felony nor a misdemeanor." Code § 46.2-100.

Code §§ 46.2-1157 and 46.2-1163, by their terms, only prohibit the operation of uninspected vehicles on "the highways in the Commonwealth." A "highway" is statutorily defined as

> [1] the entire width between the boundary lines of every way or place open to the use of the public for purposes of vehicular travel in the Commonwealth, including the streets and alleys, and, [2] *for law-enforcement purposes, the entire width between the boundary lines of all private roads or private streets that have been specifically designated "highways" by an ordinance adopted by the governing body of the county, city, or town in which such private roads or streets are located*.

Code § 46.2-100 (emphasis added).[3] As pertinent to the latter portion of this definition, Code § 46.2-1307 vests "[t]he governing body of any county, city, or town" with the authority to "adopt ordinances designating the private roads, within any residential development containing 100 or more lots, as highways for law-enforcement purposes."

Although Code §§ 46.2-1157 and 46.2-1163 prohibit the *operation* of an uninspected vehicle on a public highway, Prince William County Code § 13-322 further provides that "[i]t shall be unlawful for any person to *park* . . . any motor vehicle . . . in or on any public highway, street, alley, public easement or other public thoroughfare in the county, or any other area in the county subject to regulation by the county," if that motor vehicle is not "currently inspected and approved in accordance with the provisions of the laws of the state." County Code § 13-322(a)(1) (emphasis added). And, in accordance with Code § 46.2-1307, County Code § 13-277(a) provides that "[p]rivate roads and private streets located within any residential development, located within the unincorporated area of the County, containing one hundred (100) or more lots or residential dwelling units are hereby designated as highways for law

---

[3] In contrast, a "private road" is "every way in private ownership and used for vehicular travel by the owner and those having express or implied permission from the owner, but not by other persons." Code § 46.2-100.

enforcement purposes." Taken together, then, these Prince William County ordinances prohibit "any person" from "park[ing] . . . any motor vehicle" that is not "currently inspected" on a "[p]rivate road[] [or] private street[]" in a "residential development" with "one hundred (100) or more lots or residential dwelling units . . . ." County Code §§ 13-277(a) & 13-322.

B. Whether the County Possessed the Authority to Enact County Code § 13-277(a)

The sole question we need address is whether Prince William County possessed the authority to enforce Code § 13-322 in the private parking lot of Eberth's apartment complex.[4]

Ordinarily, a locality lacks the authority to enforce its public parking regulations in private parking areas. See Parker v. DeBose, 206 Va. 220, 223, 142 S.E.2d 510, 512 (1965) ("[G]overnmental regulations with respect to the operation of motor vehicles ordinarily are applicable only to operation on public streets and highways, and do not apply to operation on private premises, including operation on a private driveway or a private road . . . ." (internal quotations omitted)).[5] As discussed above, however, Code § 46.2-1307 permits localities to

---

[4] The County apparently concedes that, because there is no evidence in the record that the parking lot located in Eberth's apartment complex is "open to the use of the public," the parking area does not fall within the first, and more general, definition of "highway" provided by Code § 46.2-100. See, e.g., Caplan v. Bogard, 264 Va. 219, 227, 563 S.E.2d 719, 724 (2002) (holding that a driveway leading to a restaurant parking lot was not a "highway" because the plaintiffs "failed to establish the required element of unrestricted access"); Crouse v. Pugh, 188 Va. 156, 165, 49 S.E.2d 421, 426 (1948) ("The paving of a way does not make it a 'highway.' The true test is whether the 'way or place of whatever nature' is 'open to the use of the public for purposes of vehicular travel.'"); see also Roberts v. Commonwealth, 28 Va. App. 401, 403, 504 S.E.2d 890, 891 (1998) ("'The test for determining whether a way is a "highway" depends upon the degree to which the way is open to public use for vehicular traffic.'" (quoting Furman v. Call, 234 Va. 437, 439, 362 S.E.2d 709, 710 (1987))). Accordingly, we will assume, for purposes of this appeal, that the parking lot is, at most, a "private road." See Code § 46.2-100. But cf. Kay Management Co. v. Creason, 220 Va. 820, 830, 263 S.E.2d 394, 401 (1980) (holding, under a prior definition of "highway," that the streets within an apartment complex qualified as "highways" because they were "paved, curbed, and bordered by sidewalks," and there was "no evidence that the streets or roadways of the complex were restricted exclusively to the private use of the apartment dwellers or those persons who visited them").

[5] Although Code § 15.2-2027 vests localities with the authority to "regulate and control private roadways within multifamily residential developments," it does so only "to such extent as

"adopt ordinances designating the private roads, within any residential development containing 100 or more *lots*, as highways for law-enforcement purposes." (Emphasis added). By defining "highways" to encompass "private roads and private streets within any residential development . . . containing one hundred (100) or more lots *or residential dwelling units*," County Code § 13-277(a), Eberth contends that the County impermissibly expanded the scope of its law enforcement authority. We agree.

"In determining the legislative powers of the local governing bodies, Virginia follows the Dillon Rule of strict construction." Richmond v. Confrere Club of Richmond, Inc., 239 Va. 77, 79, 387 S.E.2d 471, 473 (1990). Specifically, "[t]he Dillon Rule provides that municipal corporations possess and can exercise only those powers expressly granted by the General Assembly, those necessarily or fairly implied therefrom, and those that are essential and indispensable." Id. "If there is any reasonable doubt whether legislative power exists, that doubt must be resolved against the local governing body." Id. at 79-80, 387 S.E.2d at 473. See generally City Council of Alexandria v. Lindsey Trusts, 258 Va. 424, 427, 520 S.E.2d 181, 182 (1999) (discussing Dillon Rule); Stallings v. Wall, 235 Va. 313, 315-16, 367 S.E.2d 496, 497 (1988) (same); Commonwealth v. County Board of Arlington County, 217 Va. 558, 573-74, 232 S.E.2d 30, 40 (1977) (same); Winchester v. Redmond, 93 Va. 711, 714, 25 S.E. 1001, 1002 (1896) (adopting Dillon Rule); Lawless v. County of Chesterfield, 21 Va. App. 495, 499, 465 S.E.2d 153, 154-55 (1995) (discussing application of Dillon Rule to county ordinances).

---

to allow police, fire and rescue vehicles access to the developments." The County does not argue that County Code § 13-322 falls within the scope of this exception. Similarly, although Code § 15.2-1200 authorizes localities to "adopt such measures as it deems expedient to secure and promote the health, safety and general welfare of its inhabitants," the County does not contend that defining "public highway" to include parking lots such as the one at issue in this case will "promote the health, safety and general welfare" of its residents.

On appeal, Eberth argues that, by defining "public highway" to encompass "private roads" located within residential developments containing one hundred or more "lots *or residential dwelling units*," County Code § 13-277(a) (emphasis added), and by punishing the mere "parking" of an uninspected motor vehicle, the County exceeded the scope of the limited authority granted to the County by Code § 46.2-1307. In other words, Eberth contends that the ordinance violates the Dillon Rule. The County, in contrast, argues only that the ordinance complies with the Dillon Rule because the word "lots," as used in Code § 46.2-1307, should be read to encompass the phrase "residential dwelling units." We agree with Eberth.

Although not defined in Chapter 46.2 of the Virginia Code, the generally accepted definition of "lot" is "[a] tract of land" with "specific boundaries." Black's Law Dictionary 958 (7th ed. 1999); see also Code § 55-337 (defining "lot" as "any unit, parcel, division, or piece of land"); Code § 55-509 (defining "lot" as "any plot or parcel of land designated for separate ownership or occupancy"). A "residential dwelling unit," in contrast, is "a single unit providing complete independent living facilities for one (1) or more persons, including permanent provisions for living, sleeping, eating, cooking, and sanitation." County Code § 5-81.

From these definitions, it is clear that a "residential dwelling unit" is not necessarily equivalent to a "lot." The term "lot" denotes a separate and distinct plot of land, or perhaps, under certain circumstances, a separately owned unit in a condominium. See Code § 55-509. So, for example, although an apartment building may be located on a "lot," the living units within that building do not each individually fall within the plain meaning of this term.

In contrast, "dwelling unit" is a much broader term, encompassing apartments and other living spaces that may be located, collectively, in a single building on a single lot. It follows that, although the parking lot at Eberth's apartment complex would not qualify as a private road located "within any residential development containing 100 or more *lots*," Code § 46.2-1307

(emphasis added), it would qualify as a private road located within a residential development containing one hundred or more "lots *or residential dwelling units*," County Code § 13-277(a) (emphasis added).  Accordingly, by defining "highway" to include private parking areas at residential developments containing one hundred or more "lots *or residential dwelling units*," the County expanded the scope of the limited authority granted to it by Code § 46.2-1307.  To the extent that County Code § 13-277(a) vests law enforcement officers with the authority to enforce its parking regulations in the private parking lot of an apartment complex such as the one at issue in this case,[6] we hold that the ordinance is invalid and unenforceable.  See Bd. of Supervisors v. Countryside Inv. Co., 258 Va. 497, 503, 522 S.E.2d 610, 613 (1999) ("When a local ordinance exceeds the scope of [the] authority [granted to the locality by the General Assembly], the ordinance is invalid.").

Eberth also contends that County Code § 13-322 violates the Dillon Rule by prohibiting uninspected cars from "parking" on public highways, whereas Code §§ 46.2-1157 and 46.2-1163 prohibit only the "operation" of uninspected vehicles on public highways.  The County responds that the County Code does not conflict with Code §§ 46.2-1157 and -1163, but complements them.  We agree with Eberth on this issue as well.

Although "operate" is not separately defined statutorily, Code § 46.2-100 defines an "operator" as any "person who either (i) drives or is in actual or physical control of a motor vehicle on a highway, or (ii) is exercising control over or steering a vehicle being towed by a motor vehicle."  This definition is appropriate for the purpose of determining whether one "operates" a vehicle.  See Nicolls v. Commonwealth, 212 Va. 257, 259, 184 S.E.2d 9, 11 (1971) (interpreting Code § 46.1-1(17), now codified in § 46.2-100)).  "Park" is similarly undefined

---

[6] We acknowledge that, hypothetically, a sizable apartment complex comprised of multiple buildings could conceivably contain one hundred or more "lots," however the record does not suggest that such was the case here.

- 8 -

statutorily, but the generally accepted definition of "park" is "the leaving of a vehicle in an accessible location." Webster's Third New International Dictionary 1642 (1993).

Based upon these definitions, "operate" and "park" have substantially different meanings, and therefore ought not be used interchangeably. In this case, the County has prohibited the "parking" of an uninspected motor vehicle on a public highway, whereas the General Assembly has merely prohibited the "operation" of such vehicle on a public highway. We can find no statutory authority authorizing the County to take such action and the County offers none, thus there is a clear conflict between County Code § 13-322 and Code § 46.2-1163. Accordingly, County Code § 13-322(a)(1) violates the Dillon Rule in this regard as well.

Because the County lacks the authority to apply County Code § 13-322 to a vehicle parked in the private parking lot of an apartment complex, we reverse Eberth's conviction and dismiss the underlying citation.

CONCLUSION

For these reasons, we hold that, in enacting County Code § 13-277(a), Prince William County exceeded the scope of the authority granted to it by Code § 46.2-1307. The County did not have the authority to enforce its parking regulations on "private roads" such as the one at issue in this case. Likewise, the County did not have the authority to enact County Code § 13-322, which prohibits the parking of uninspected vehicles on public highways. We reverse[7] the judgment below and dismiss the underlying citation.

Reversed and dismissed.

---

[7] Because we reverse under the Dillon Rule, we need not address the Equal Protection issue.

- 9 -