COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Humphreys and Haley
Argued by teleconference


COMMONWEALTH OF VIRGINIA

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0101-11-4                      JUDGE ROBERT P. FRANK
                                                          MAY 24, 2011

MAURICE D. GASKINS


                 FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                            Michael F. Devine, Judge

            Jennifer C. Williamson, Assistant Attorney General (Kenneth T.
            Cuccinelli, II, Attorney General, on brief), for appellant.

            Mark S. Loria for appellee.


       The Commonwealth, appellant, appeals, pursuant to Code § 19.2-398, the trial court's

decision to grant Maurice Gaskins' motion to suppress the evidence gathered pursuant to a traffic

stop of his vehicle.  The trial court ruled that the officer did not have reasonable, articulable

suspicion to effect the traffic stop.  For the reasons stated, we reverse the trial court's order granting

the motion to suppress.

       On the appeal by the Commonwealth of a trial court's pretrial order granting a motion to

suppress evidence, we view the evidence in the record in the light most favorable to the accused,

the prevailing party below, granting to the evidence all reasonable inferences fairly deducible

therefrom.  Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).

When this Court reviews a trial court's ruling on a motion to suppress, "'the burden is upon [the

losing party] to show that the ruling, when the evidence is considered most favorably to the

_____

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[prevailing party], constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)).

> An appellant's claim that evidence was seized in violation of the Fourth Amendment "presents a mixed question of law and fact that we review *de novo* on appeal.  In making such a determination, we give deference to the factual findings of the trial court and independently determine whether the manner in which the evidence was obtained [violated] the Fourth Amendment."

Wilson v. Commonwealth, 45 Va. App. 193, 202-03, 609 S.E.2d 612, 616 (2005) (alteration in original) (quoting Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002)). On appeal, "we defer to the trial court's findings of 'historical fact' and give 'due weight to the inferences drawn from those facts by resident judges and local law enforcement officers.'" Barkley v. Commonwealth, 39 Va. App. 682, 690, 576 S.E.2d 234, 238 (2003) (quoting Davis v. Commonwealth, 37 Va. App. 421, 429, 559 S.E.2d 374, 378 (2002)).

Reasonable suspicion is "'a particularized and objective basis' for suspecting the person stopped of criminal activity." Ornelas v. United States, 517 U.S. 690, 696 (1996) (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)).  "There is no 'litmus test' for reasonable suspicion.  Each instance of police conduct must be judged for reasonableness in light of the particular circumstances." Castaneda v. Commonwealth, 7 Va. App. 574, 580, 376 S.E.2d 82, 85 (1989) (*en banc*) (citing Terry v. Ohio, 392 U.S. 1, 21 (1968)).  "In order to determine what cause is sufficient to authorize police to stop a person, cognizance must be taken of the 'totality of the circumstances -- the whole picture.'" Leeth v. Commonwealth, 223 Va. 335, 340, 288 S.E.2d 475, 478 (1982) (citing Cortez, 449 U.S. at 417).  As long as an officer reasonably suspects that the "driver is violating any one of the multitude of applicable traffic and equipment regulations," the police officer may legally stop the vehicle. Delaware v. Prouse, 440 U.S. 648,

661 (1979). In sum, an officer may stop a vehicle when he observes an equipment violation. McCain v. Commonwealth, 275 Va. 546, 553, 659 S.E.2d 512, 516 (2008).

The facts here are not in dispute. Fairfax County Police Officer David Montgomery observed that when appellee applied his brakes, half of the high mount brake light on the rear window of his vehicle was not functioning due to a burned out bulb. Because of this, Officer Montgomery initiated a traffic stop of appellee's vehicle for defective equipment.

On appeal, the Commonwealth contends the trial court erred in finding that the stop was without reasonable, articulable suspicion. The Commonwealth argues that the trial court, in evaluating whether the broken high mount brake light could serve as the basis for the stop, failed to consider the requirements of Code § 46.2-1014.1. Had it done so, reasons the Commonwealth, the trial court should have found that Officer Montgomery had reasonable suspicion to stop the vehicle for investigation of a violation of Code § 46.2-1003.

Code § 46.2-1003 provides:

> It shall be unlawful for any person to use or have as equipment on a motor vehicle operated on a highway any device or equipment mentioned in § 46.2-1002 which is defective or in unsafe condition.

Code § 46.2-1002 applies to "any lighting device, warning device, signal device, safety glass, or other equipment for which approval is required by any provision of this chapter."[1] Additionally, Code § 46.2-1014.1 requires that the vehicle appellee was driving "shall be equipped with a supplemental center high mount stop light of a type approved by the Superintendent or which meets the standards adopted by the United States Department of Transportation."

---

[1] The "approval" to which this statute refers is that of the Superintendent of the Department of State Police of the Commonwealth. Code §§ 46.2-100 and 46.2-1002.

First, we must consider whether a broken high mount brake light constitutes defective equipment in violation of Code § 46.2-1003.[2] "[W]hen analyzing a statute, we must assume that 'the legislature chose, with care, the words it used . . . and we are bound by those words as we interpret the statute.'" City of Virginia Beach v. ESG Enters., 243 Va. 149, 153, 413 S.E.2d 642, 644 (1992) (quoting Barr v. Town & Country Props., 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990)). "'Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed.'" Barr, 240 Va. at 295, 396 S.E.2d at 674 (quoting Watkins v. Hall, 161 Va. 924, 930, 172 S.E. 445, 447 (1933)). As an appellate court, we review issues of statutory interpretation *de novo*. Jones v. Commonwealth, 276 Va. 121, 124, 661 S.E.2d 412, 414 (2008).

We are persuaded by the reasoning of Ragland v. Commonwealth, No. 1036-96-2, 1997 Va. App. LEXIS 109 (Va. Ct. App. Feb. 18, 1997).[3] In Ragland, a police officer stopped appellant's vehicle because of a reasonable, articulable suspicion that appellant was driving with a defective taillight. The officer "observed that the red plastic covering of appellant's tail light was out of place so that it emanated both a red light and a white light."[4] Id. at *5. Ragland argued that Code § 46.2-1013 must be read together with Code § 46.2-1003 and that a driver

---

[2] Defective is defined as "lacking perfection; having a defect; faulty." The American Heritage Dictionary of the English Language 345 (1982).

[3] "Although an unpublished opinion of the Court has no precedential value, a court . . . does not err by considering the rationale and adopting it to the extent it is persuasive." Fairfax Cnty. Sch. Bd. v. Rose, 29 Va. App. 32, 39 n.3, 509 S.E.2d 525, 528 n.3 (1999) (*en banc*) (citation omitted); see also Rule 5A:1(f) ("The citation of judicial opinions, orders, judgments, or other written dispositions that are not officially reported . . . is permitted as informative, but shall not be received as binding authority.").

[4] At the time of the stop, Code § 46.2-1013 requires taillights to be a "red light plainly visible in clear weather from a distance of 500 feet to the rear of such vehicle."

does not violate Code § 46.2-1003 if his car has at least one taillight that functions in accordance with Code § 46.2-1013. We rejected that argument and explained:

> Code § 46.2-1003 . . . is codified among the provisions regarding "vehicle and equipment safety." It does more than set a minimum standard; it regulates the maintenance of devices or equipment used on a vehicle. In particular, Code § 46.2-1003 prohibits the use on a vehicle of any equipment mentioned in Code § 46.2-1002 that is either unsafe or defective, whether or not this equipment exceeds the minimum requirements set forth elsewhere in the Code. Thus, the apparent intent of Code § 46.2-1003 is to compel automobile owners to repair or replace any of their vehicle's equipment that falls into a defective or unsafe condition.

Id. at *6-7.

As in Ragland, appellee's argument here ignores that drivers have a duty to keep their vehicles from falling into an unsafe or defective condition. Applying this standard, we conclude that the broken brake light provided Officer Montgomery with reasonable suspicion to conduct a traffic stop. Because Code § 46.2-1014.1 requires appellee's vehicle to be equipped with a supplemental center high mount stop light, and Officer Montgomery observed that the light was defective, he had reasonable suspicion to believe appellee was in violation of Code § 46.2-1003.

We do not determine whether appellee is guilty of driving a vehicle with defective equipment, but only whether reasonable suspicion existed to stop his vehicle for further investigation.

We conclude that the trial court erred in granting the motion to suppress. We reverse the judgment and remand for trial on the merits if the Commonwealth be so advised.

Reversed and remanded.

- 5 -

Humphreys, J., dissenting.

I must respectfully dissent. I cannot join the majority's reliance on Ragland v. Commonwealth, No. 1036-96-2, 1997 Va. App. LEXIS 109 (Va. Ct. App. Feb. 18, 1997), because I believe that case to have been wrongly decided. Moreover, I note that Ragland, as an unpublished decision of this Court, is neither binding nor controlling legal precedent.

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." United States v. Arvizu, 534 U.S. 266, 273 (2002) (citing Terry v. Ohio, 392 U.S. 1, 9 (1968)). "A police officer may conduct an investigatory stop of a motor vehicle if he has at least articulable and reasonable suspicion that the operator is unlicensed, the vehicle is unregistered, or the vehicle or an occupant is otherwise subject to seizure for violating the law." Reel v. Commonwealth, 31 Va. App. 262, 265-66, 522 S.E.2d 881, 883 (2000) (citations omitted). "Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability." Alabama v. White, 496 U.S. 325, 330 (1990). Moreover,

> [t]he reasonableness of seizures that are less intrusive than a traditional arrest depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers. Consideration of the constitutionality of such seizures involves a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty.
>
> A central concern in balancing these competing considerations in a variety of settings has been to assure that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field. To this end, the Fourth Amendment requires that a seizure must be based on specific, objective facts indicating that society's legitimate interests require the seizure of the particular individual, or that the seizure must be carried out pursuant to a plan

embodying explicit, neutral limitations on the conduct of
individual officers.

Brown v. Texas, 443 U.S. 47, 50-51 (1979) (citations omitted).

In this case, Officer Montgomery stopped the vehicle Gaskins was driving because one of

the light bulbs on the supplemental high mount stop light was burned out. Clearly, "[m]otor

vehicles operating on the highways of this State are required to comply with the *statutes* relating

to lighting equipment in effect at the time of their operation." Hall v. Hockaday, 206 Va. 792,

798, 146 S.E.2d 215, 219 (1966) (emphasis added). Code § 46.2-1014.1, which governs the

requirements for high mount stop lighting, provides,

> Whenever operated on the highways, every Virginia-registered
> passenger car manufactured for the 1986 or subsequent model year
> shall be equipped with a supplemental center high mount stop light
> of a type approved by the Superintendent or which meets the
> standards adopted by the United States Department of
> Transportation. The light shall be mounted as near the vertical
> center line of the vehicle as possible. The light shall be actuated
> only in conjunction with the vehicle's brake lights and hazard
> lights. Any supplemental high mount stop light installed on any
> other vehicle shall comply with those requirements.

According to Code § 46.2-1002,

> [i]t shall be unlawful for any person . . . to use or have as
> equipment on a motor vehicle operated on a highway any lighting
> device, warning device, signal device, safety glass, or other
> equipment for which approval is required by any provision of this
> chapter . . . unless of a type that has been submitted to and
> approved by the Superintendent or meets or exceeds the standards
> and specifications of the Society of Automotive Engineers, the
> American National Standards Institute, Incorporated or the federal
> Department of Transportation.

As the Commonwealth correctly notes, Code § 46.2-1003 provides, "[i]t shall be unlawful for

any person to use or have as equipment on a motor vehicle operated on a highway any device or

equipment mentioned in § 46.2-1002 which is defective or in unsafe condition." Read together,

these code sections clearly mandate that all vehicles operating on the highways that are

- 7 -

manufactured after 1986 must (1) include a supplemental high mount stop light that is; (2) approved by the Superintendent or exceeds the standards and specifications of the Society of Automotive Engineers, the American National Standards Institute, Incorporated or the federal Department of Transportation; (3) that the light must be "mounted as near the vertical center line of the vehicle as possible" and "actuated only in conjunction with the vehicle's brake lights and hazard lights"; and (4) the light cannot be "defective" or "unsafe." Code § 46.2-1014.1.

Here, as Officer Montgomery clearly observed, Gaskins's high mount stop light illuminated in conjunction with his brake lights. The crux of the issue before us is that the parties disagree as to whether the high mount stop light on Gaskins's vehicle was rendered "defective" or otherwise inoperative when one of the bulbs in the two-bulb unit burned out. Put more succinctly, the issue before us is whether a police officer has the requisite reasonable suspicion that "criminal activity may be afoot," or, at least, that a violation of a traffic regulation exists, when the equipment on a motor vehicle clearly meets the minimum requirements of the Code, even though it is in some way deficient with respect to the manufacturer's original design specifications.

The word "defective," is not defined by statute, but its ordinary and accepted meaning is "wanting in something essential: falling below an accepted standard in regularity and soundness of form or structure or in adequacy of function: faulty, deficient, insufficient." Webster's Third New International Dictionary 591 (1993). In this case, there is no dispute that the high mount stop light on Gaskins's vehicle met the essential legal requirements mandated by the statute. The single unit stop light was of a type approved by the Superintendent, it was mounted at the vertical center line of Gaskins's vehicle, and it illuminated in conjunction with the vehicle's brake lights and hazard lights. The mere fact that one of the bulbs in the dual bulb fixture was

- 8 -

burned out is simply of no legal moment. Code § 46.2-1014.1 does not require that every bulb be working; it merely requires that *a* light go on when the brakes are applied.

Thus, at the time of the stop, Officer Montgomery had no reason to believe that Gaskins's high mount stop light deviated in any way from the standards for high mount stop lights set forth in Code § 46.2-1014.1. By extension, it was not reasonable for Officer Montgomery to believe that the equipment on Gaskins's vehicle was "wanting in something essential," or that it fell "below an accepted standard in regularity and soundness of form or structure or in adequacy of function." Id. In other words, Officer Montgomery had no objective reason to believe "criminal activity may be afoot." Moore v. Commonwealth, 276 Va. App. 747, 757, 668 S.E.2d 150, 155 (2008) (citation omitted). Because Gaskins's high mount stop light was, in fact, in compliance with the statute requiring it, I believe the stop of Gaskins's vehicle, merely because one of the light bulbs *not required* by the statute was inoperative, is not one that society is prepared to recognize as reasonable.

It follows that because Officer Montgomery failed to articulate sufficient objective facts reasonably justifying the seizure of Gaskins's vehicle, the stop violated the Fourth Amendment. The trial court did not, in my view, abuse its discretion in suppressing the evidence obtained against Gaskins during the stop. I would, therefore, affirm the order suppressing the evidence.