## Richmond

VINCENT JAMES GIRARDI

v.

COMMONWEALTH OF VIRGINIA

October 10, 1980.

Record No. 800118.

Present: All the Justices.

*Louis Koutoulakos* for appellant.

*Thomas D. Bagwell, Assistant Attorney General (Marshall Coleman, Attorney General,* on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

Tried by the court on two amended indictments charging possession of methaqualone and possession of cocaine, James Vincent Girardi was found guilty as charged. By judgment entered November 16, 1979, his punishment was fixed at confinement in the penitentiary for one year and five years, respectively, execution of the five-year sentence being suspended upon specified conditions. On appeal, the question presented is whether the controlled drugs, discovered in Girardi's automobile, were improperly admitted into evidence as the product of

a warrantless search and seizure in violation of his Fourth Amendment rights.

Girardi filed a pretrial motion to suppress the evidence on the ground that the contraband was illegally seized from his vehicle, a green Ford, because there was no search warrant and no probable cause for the search, and the entry into the automobile was "forced". After conducting a hearing, of which we have no transcript, the trial court overruled the motion. In a written opinion, the court ruled that Girardi's car, parked in a fire lane on private property, had been lawfully impounded by the police, and that the incriminating evidence had been discovered and seized during the course of a valid inventory search conducted in accordance with the policy and procedures of the Arlington County Police Department. At trial, on June 12, 1979, with another judge presiding, the evidence was admitted, over Girardi's objection, after witnesses for the Commonwealth had testified to the circumstances under which the police had seized the drugs. Girardi presented no evidence.

Sean Morrissey, a privately employed security guard, testified that on August 17, 1978, at approximately 2:30 a.m., he was on duty at the River House apartment complex. He had parked his car to make a security check when a man driving a green car with Pennsylvania license plates pulled up and asked him for directions to an apartment. Morrissey directed him to the desk clerk in River House No. 2. Later, while continuing on his rounds, Morrissey saw the green car parked in a fire lane in front of River House No. 2, but he assumed that the driver would soon return and did not issue a parking ticket or a warning for illegal parking. About 4:30 a.m., Morrissey observed Officer Peralta of the Arlington County Police Department in a car parked close to the green car. He conversed briefly with the officer about an unrelated matter and then moved away. When asked on cross-examination whether he saw Peralta "ticketing" the green car, Morrissey responded affirmatively. On other occasions he had seen tickets placed by the police on vehicles parked in the fire lane. Morrissey observed that Peralta entered the green car by force, and that he was present when a tow truck arrived and towed it away. Although Morrissey thought he knew the number of the apartment where the driver had gone, he did not give this information to Peralta until after the vehicle had been entered. Nevertheless, the security guard cooperated with the police and about 6:00 a.m. led them to the apartment where, in response to Morrissey's inquiry, the driver of the green car, subsequently identified as Girardi, came to the door. The police officers then "took over".

Officer Peralta testified that he was on routine patrol at 3:00 a.m., on August 17, when he observed an unoccupied 1978 green Ford with Pennsylvania tags parked in the fire lane at River House No. 2. Peralta issued a summons for illegal parking and placed it on the windshield. Returning at 4:30 a.m., he saw that the car was still parked in the fire lane. He spoke to Morrissey but did not inquire whether he knew where the driver had gone. Peralta called for a tow truck, privately owned and operated under contract with the County, to remove the automobile in order to clear the fire lane for use by firefighting apparatus in the event of a fire in the high-rise apartment building. When the tow truck·arrived, Peralta looked inside the Ford and saw numerous pieces of luggage, including several gym bags, on the back seat and floor. The car was locked with special theft-proof locks. There was no one near the Ford, and Peralta had no reason to believe that it contained contraband. Peralta sought to enter the vehicle to inventory and protect the personal property therein pursuant to an Arlington County police Department directive in effect since June 1, 1977, providing in pertinent part as follows:

> [An] inventory search . . . conducted to identify and take possession for safekeeping of valuable property from the towed vehicle . . . should be conducted prior to the towing of the vehicle for the place of impoundment. . . .
> If a vehicle is locked . . . the vehicle may be entered with the minimal force necessary to conduct the search. . . . If a search is to be conducted, the crane operator should be instructed to open the vehicle when he arrives at the scene.

According to Peralta, the tow truck operator, whom he asked to unlock the Ford, was unable to do so. At Peralta's request, another police officer, Sergeant Hawkins, then unlocked the door on the passenger side by inserting a thin metal plate known as a "Slim Jim" between the window and the frame. Peralta entered the vehicle and removed some of the luggage. He opened a partially closed blue-and-white gym bag that had a T-shirt protruding from it and found what appeared to be drug paraphernalia and an unknown quantity of controlled drugs. Realizing then that more than a routine inventory search was involved, Peralta replaced the drugs in the bag and took all the luggage to the police station for inventory and safekeeping. He himself inventoried jewelry, miscellaneous clothing, and tapes found inside the bags, but he did not give an inventory list to Girardi. The Ford was towed to a private lot.

Peralta returned from the police station to the apartment complex for the purpose of finding and arresting the driver of the Ford. With the assistance of Morrissey, Girardi was found in an apartment, identified as the driver, and arrested by the police.

■ Girardi first contends that the trial court erred in denying his pretrial motion to suppress evidence that was the product of an illegal seizure and search by the police after a forced entry into his locked automobile. In its opinion, the court ruled that the seizure of the vehicle occurred at the time the forcible entry was effected, and that the seizure was valid in order to protect the safety of residents of the apartment complex in the event of fire. Noting that Girardi questioned the right of the police to issue summonses for obstructing the fire lane on private property, the court ruled that, based upon Officer Peralta's testimony, which the court found to be the only evidence on the issue, the police had such authority. At trial on the merits, Girardi did not raise this question again, but the evidence therein taken supports the earlier ruling on the motion to suppress that Peralta had authority to seize Girardi's car and remove it from the fire lane.

■ Girardi argues that, even if the seizure was lawful, the ensuing warrantless search of his vehicle was invalid. The general rule is, of course, that warrantless searches without consent are *per se* unreasonable and thus invalid under the Fourth Amendment, subject to a few well-defined exceptions. *Cady* v. *Dombroski,* 413 U.S. 433, 439 (1973). *See Coolidge* v. *New Hampshire,* 403 U.S. 443, 454-55 (1971). Girardi acknowledges that one of the recognized exceptions to the warrant requirement is the inventory search, as approved in *South Dakota* v. *Opperman,* 428 U.S. 364 (1976), *Cady* v. *Dombroski, supra,* and *Cabbler* v. *Commonwealth,* 212 Va. 520, 184 S.E.2d 781 (1971), *cert. denied,* 405 U.S. 1073 (1972), but he says that the search of his car was not a valid inventory search. We disagree.

Girardi cannot successfully distinguish *Opperman, Cady,* and *Cabbler.* In *Opperman,* the vehicle was illegally parked in a restricted zone. After two summonses for illegal parking had been placed upon the windshield, the locked, unoccupied car was towed to the city's impoundment lot, where it was unlocked and searched pursuant to standard inventory procedures. Marijuana found in the unlocked glove compartment was held to be admissible in evidence. In *Cady,* the automobile was wrecked in an accident and the driver, an off-duty policeman, appeared to be intoxicated. The investigating officers had the car towed to an impoundment garage. Several hours later, know-

ing that the driver had a service revolver, an officer followed standard police policy by returning to the car to look for the weapon. Opening the door, the officer saw blood on a flashlight. He then opened the locked trunk and found incriminating evidence that was held to be admissible at trial. In *Cabbler,* the car was parked in a prohibited zone on a private driveway of a hospital. It was towed away and searched by the police in conformity with established procedures, and the incriminating evidence found during the inventory search was held to be admissible.

■ The inventory search exception to the warrant requirement is justified, as these cases demonstrate, to protect the owner's property, to protect the police from claims that property was lost or stolen, and to protect the police and the public from physical harm from the potentially dangerous contents of a seized automobile. *Reese* v. *Commonwealth,* 220 Va. 1035, 1039, 265 S.E.2d 746, 749 (1980). Where, as in the present case, the seized vehicle will be towed by a private operator to a private impoundment lot there is good reason for the police to make an inventory search before they relinquish even temporary control over the car. Therefore, as the trial court stated in its opinion overruling the motion to suppress, the fact that in *Opperman, Cady,* and *Cabbler,* the search was made at the place of impoundment, and in the present case it was made at the place of seizure, provides no valid basis for distinguishing the cases.

We reject Girardi's argument that it was not necessary to remove the luggage because it was in a safe place in his locked car and posed no threat to the police. The fact that the car was locked did not protect the police from potential liability, it did not protect the police or the public from possible danger, and it did not protect the owner from possible loss or damage resulting from negligence or vandalism. The automobile impounded in *Opperman* was locked, as was the vehicle seized in *United States* v. *Dall,* 608 F.2d 910 (1st Cir. 1979), *cert. denied,* 445 U.S. 918 (1980). Further the trial court found that Officer Peralta followed established Arlington County Police procedures in conducting a legitimate inventory search, and that there was no evidence that the officer "contrived the . . . search as a pretext". *See Thims* v. *Commonwealth,* 218 Va. 85, 92, 235 S.E.2d 443, 447 (1977).

■ There is no merit in Girardi's contention that Peralta failed to follow the prescribed procedures for inventory searches mandated by the directive by not having the tow truck operator open the car door and by failing to make an inventory list and give a copy to Girardi.

The directive recited that by contract the tow truck operator was required to have the necessary tools to unlock vehicles and should be instructed by the police to open an impounded car that was found to be locked. However, the evidence is clear that it was only after the tow truck operator had attempted unsuccessfully to unlock the Girardi car that Sergeant Hawkins performed this task. There is nothing in the record to show that Peralta was required to present an inventory list to Girardi. Peralta testified that when he discovered the contraband drugs in Girardi's luggage he was confronted with a problem more serious than a routine inventory. He therefore transported all the personal property to the police station, delivered the contraband to be inventoried, and inventoried the other personal property himself before depositing it in the property room. He conceded that he did not give an inventory list to Girardi. We hold that the evidence supports the trial court's finding that the contraband was discovered during the course of a legitimate inventory search. Interruption or discontinuance of the inventory search upon discovery of the drugs did not invalidate it retroactively. The discovery immediately changed the police function from mere custodial care to the prompt investigation of the felonies thereby revealed.

■ On appeal, Girardi raised for the first time the question whether Peralta's search of the unlocked luggage was unreasonable and hence invalid under *Arkansas* v. *Sanders,* 442 U.S. 753 (1979), decided after Girardi's trial. *Sanders* is inapposite because it did not involve an inventory search. In *Sanders,* police officers had probable cause to believe that a suitcase placed in the trunk of a taxi by a passenger contained marijuana. They followed the vehicle, stopped it on the highway, seized the unlocked suitcase, and, without a warrant or consent, opened and searched it. The Supreme Court held that the warrantless search was invalid, in that no exigent circumstances excused the officers who had seized the suitcase from obtaining a search warrant before opening it. The majority of the Court considered the search to be an unreasonable extension of the "automobile exception" to the warrant requirement enunciated in *Chambers* v. *Maroney,* 399 U.S. 42 (1970). The mobility and diminished expectations of privacy that justify the "automobile exception" do not extend to personal luggage that the police have brought under their exclusive control.

However, we do not reach the question which Girardi now poses. If a challenge to the constitutionality of a search and seizure is to be made on appeal, the challenge must be made first in a pretrial motion to suppress or by objection at trial. *Manley* v. *Commonwealth,* 211

Va. 146, 149, 176 S.E.2d 309, 312 (1970), *cert. denied,* 403 U.S. 936 (1971); Rule 5:21. Girardi made no such challenge. Therefore, we do not decide whether it is constitutionally permissible in an inventory search to open and search unlocked personal luggage.

For the reasons assigned, the judgment of the trial court will be affirmed.

*Affirmed.*