COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judge Annunziata and Senior Judge Willis
Argued at Alexandria, Virginia


JAMES HENRY FISHER

                                                                   OPINION BY
v.        Record Nos. 3309-02-4 and          CHIEF JUDGE JOHANNA L. FITZPATRICK
                      0553-03-4                          FEBRUARY 10, 2004

COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                            Benjamin N.A. Kendrick, Judge
                              Paul F. Sheridan, Judge

          Michael C. Sprano (Lopez, Meleen & Sprano, P.L.C., on brief), for
          appellant.

          Michael T. Judge, Assistant Attorney General (Jerry W. Kilgore,
          Attorney General, on brief), for appellee.


      James Henry Fisher (appellant) appeals his convictions for possessing a firearm while

possessing cocaine in violation of Code § 18.2-308.4, and possessing a firearm while a convicted

felon in violation of Code § 18.2-308.2.[1]  Appellant contends that the trial court erred in:  (1)

denying his motion to suppress, because the evidence was seized following an improper

impoundment and inventory search of his automobile in violation of the Fourth Amendment, and

(2) admitting evidence that appellant and his vehicle matched an earlier police description of a

person who brandished and placed a shotgun in the trunk of the car.  We hold that the impoundment

was lawful and the subsequent inventory search was proper and that the trial court did not abuse its

---

      [1] Appellant does not appeal his conviction for possession of cocaine in violation of Code
§ 18.2-250, to which he pled guilty.

discretion in allowing evidence that appellant was seen putting a shotgun in the trunk of his car one week earlier. Accordingly, we affirm the judgment of the trial court.

## I. BACKGROUND

Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. See Juares v. Commonwealth, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997). So viewed, the evidence establishes that on July 12, 2001 at approximately midnight, Corporal David Avery (Avery) of the Arlington County Police Department saw appellant driving south on South 19th Street. His car matched the description of a car that was the subject of a police "be on the lookout" (BOL) broadcast Avery received a week earlier. The broadcast described a black male with an older model Cadillac who had been involved in an altercation two blocks away from appellant's current location, and who carried a shotgun in the trunk of his car. Avery confirmed that appellant's tags matched those of the car described in the BOL, and saw that appellant had no inspection or rejection sticker on his car. After appellant made an illegal right-hand turn into the parking lot of Concord Village Apartments, Avery pulled him over. Avery knew that appellant did not live in the apartment complex, which was located on private property and required a parking decal.

Avery asked appellant why his car had no inspection or rejection sticker on the windshield. In response, appellant, who appeared nervous, admitted that his car had been rejected and that he had removed the sticker after he received several citations. Appellant reached into the glove box that appeared to be unlocked, and handed Avery four or five summonses he had been issued for the rejection sticker. When appellant leaned into the car and returned the summonses to the glove box, he obscured Avery's view for 20 to 30 seconds.

Avery told appellant that he could not drive the car because of the rejection sticker and that he needed to tow the vehicle in accord with Arlington County Police Department policies. Avery explained that he could not determine the reason the car was rejected because there was no rejection sticker displayed and he could not visually make that determination:

> Say it was rejected for a light out or something, I may leave the car or let him park it, but not knowing why it was defective, when it could be brakes or whatever, and plus the fact he was still driving it. Even though it had been rejected, he had taken the rejection sticker off, gotten the ticket[s], continued to drive it; the department's policy is to tow it, and that's what I did.

When Avery asked appellant for the keys, appellant gave him the ignition key only. The glove box appeared to be locked at that time. Avery knew from experience that appellant's automobile model required a second key to open the trunk and glove box. Appellant told Avery that the second key was lost, and Avery became suspicious. He began an inventory search of the vehicle before towing it and found a pill bottle on the driver's side floorboard. When he walked around to the glove box and again asked appellant for the key, appellant repeated that the key was lost. After a second officer indicated that the trunk would be easy to search because it was already open, appellant "looked very nervous," and quickly went to the rear of the car and slammed the trunk lid down three times. While waiting for the tow truck, the officers tested the pill bottle and it returned positive for cocaine. Avery obtained a search warrant because of the cocaine found in the pill bottle and because he could not complete the inventory search since appellant would not provide a key to the trunk or glove box. When he searched the vehicle at the impound lot, Avery found a clear plastic bag containing approximately ten rocks of cocaine and a wallet belonging to Fisher in the glove box, and a 12-gauge shotgun in the trunk.

The trial court denied appellant's motion to suppress. It found the police action to impound the vehicle was reasonable based on appellant's behavior, Avery's determination that

the vehicle was potentially unsafe and should not be driven, and its location in a private parking lot.

## II. MOTION TO SUPPRESS

"The burden to establish that the denial of the motion to suppress constituted reversible error rests with the defendant." King v. Commonwealth, 39 Va. App. 306, 308, 572 S.E.2d 518, 519 (2002) (citations omitted). "We are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)). However, we review *de novo* the trial court's application of legal standards such as probable cause and reasonable suspicion to the particular facts of the case. See Shears v. Commonwealth, 23 Va. App. 394, 398, 477 S.E.2d 309, 311 (1996); Ornelas, 517 U.S. at 699; Hayes v. Commonwealth, 29 Va. App. 647, 652, 514 S.E.2d 357, 359 (1999).

On appeal, appellant contends that his automobile could not be lawfully impounded and searched unless Avery first determined the basis for the vehicle's rejection, and asked appellant if he wished to make alternative towing arrangements. We disagree.

"The general rule is . . . that warrantless searches without consent are *per se* unreasonable and thus invalid under the Fourth Amendment, subject to a few well-defined exceptions." Girardi v. Commonwealth, 221 Va. 459, 463, 270 S.E.2d 743, 745 (1980) (citing Cady v. Dombroski, 413 U.S. 433, 439 (1973)). "[O]ne of the recognized exceptions to the warrant requirement is the inventory search, as approved in South Dakota v. Opperman, 428 U.S. 364 (1976)." Id. at 463, 270 S.E.2d at 746. This Court adopted the three-pronged Opperman test in

Servis v. Commonwealth, 6 Va. App. 507, 371 S.E.2d 156 (1988), holding that "a routine inventory search of a *lawfully impounded* vehicle conducted pursuant to standard police procedure is reasonable under the fourth amendment unless it is a 'pretext concealing an investigatory motive.'" Id. at 521, 371 S.E.2d at 163 (quoting Opperman, 428 U.S. at 376). See also King, 39 Va. App. at 310, 572 S.E.2d at 520.[2]

Arlington County Police Department procedures[3] concerning "Towing, Seizing, Impounding, Searching and Releasing Vehicles" provide, *inter alia*:

> When a vehicle is impounded for defective equipment the officer must take possession of the license plates, the registration card and decals prior to towing it. The officer will retain the same in his possession for a period of fifteen days unless the owner of the vehicle corrects the defect(s) in which case the license plates, registration card, and decals will be returned to the owner. If the owner has not corrected the deficiencies after fifteen days and notified the officer the license plates, registration card and decals will be forwarded to the DMV.[4]

Arlington County Police Department Procedures #514.01 (1981) (amended 1999). The procedures also provide for impoundment when a vehicle or its contents are considered evidence:

> When fingerprint processing and searching for evidence and other processing is not completed at the scene of impoundment, the

---

[2] Rule 5A:18 requires that a ruling may not be appealed unless an objection and its grounds were stated together at the time of the ruling, except for good cause or to enable the Court of Appeals to attain the ends of justice. Because appellant did not preserve the question of whether the search was a pretext concealing an investigatory motive, we need only determine whether the impoundment was reasonable and in accord with standard police procedures.

[3] Appellant does not contest the validity of the procedures.

[4] The Arlington County Police Department Procedures also cite the requirements of Code § 46.2-1000, which provide for suspension of the registration of any motor vehicle that has certain enumerated defects, or is "otherwise unsafe to be operated."

vehicle should be towed directly to the police impound lot or other designated location for further processing.

Id.

Although we have not specifically addressed whether the lack of an inspection sticker constitutes lawful grounds for impoundment, our recent analysis in Reel v. Commonwealth, 31 Va. App. 262, 522 S.E.2d 881 (2000), is compelling. In Reel, we held that the "operation of a vehicle displaying a pink rejection sticker provided reasonable suspicion that [the driver] was committing a traffic infraction" and that the presence of a rejection sticker indicates defective equipment:

> Virginia law requires that all cars registered and operated in Virginia undergo an annual safety inspection, regardless of the city or county in which the owner resides. A vehicle bearing a rejection sticker has expressly been found to *have mechanical defect of such magnitude that the legislature has declared the vehicle unsafe to operate until the defect is repaired*.

Id. at 269, 522 S.E.2d at 884 (emphasis added).

In Reel we noted that Code § 46.2-1157 requires that:

> "No owner or operator shall fail to submit a motor vehicle, trailer, or semitrailer operated on the highways in this Commonwealth to such inspection or fail or refuse to correct or have corrected in accordance with the requirements of this title any mechanical defects found by such inspection to exist."[5]

Id. at 266, 522 S.E.2d at 883 (footnote added).

Appellant's continued use of a defective vehicle provided a reasonable basis for Avery to impound and tow the car pursuant to the valid Arlington County Police Department procedures. Appellant admitted that he removed the car's rejection sticker and that he continued to drive the

---

[5] Code § 46.2-1163 provides that vehicles operated on the highways of the Commonwealth must display a valid inspection sticker. A first violation of this provision constitutes a Class 3 misdemeanor. A subsequent conviction, unless otherwise provided in the articles, constitutes a Class 1 misdemeanor.

car after receiving numerous violations for having no valid inspection. Avery was unable to ascertain why the vehicle had failed inspection, and reasonably concluded that the vehicle might pose a danger to other drivers. Appellant did not give him a specific reason for the rejection, but even if he had, Avery was not required to accept it. Additionally, appellant's car was in a private parking lot which required a decal to lawfully park, and it had no such decal. Avery knew from experience that if the vehicle was left there it could be towed and potentially subject the Arlington Police Department to civil liability.

Appellant also contends that his car was not lawfully impounded because Avery did not respect "the wishes of the driver who can make arrangements for the vehicle other than having it towed to the impound lot." This contention is without merit and unsupported by the record. While the Arlington County procedures allow an owner to request a specific disposition, the officer has the discretion to deny the request.[6] No evidence shows that appellant requested that Avery make other arrangements for the vehicle to be removed.

Appellant's attempts to distinguish Butler v. Commonwealth, 31 Va. App. 614, 525 S.E.2d 58 (2000), from the instant case are misplaced. The appellant in Butler pulled his car into an apartment complex parking garage before being stopped by an officer for speeding and driving with an expired license. Id. at 617, 525 S.E.2d at 59. After the first officer arrested the appellant, a second officer who lived in the apartment complex told him that the appellant's car

---

[6]    If the registered owner of the vehicle is at the scene and has a specific request for the towing . . . of the vehicle, an attempt to honor that request should be made. Factors to consider in honoring the request are traffic conditions . . . . If the owner does not have a specific request or the request cannot be honored . . . the vehicle will be impounded.

Arlington County Police Department Procedures #514.01 (1981) (amended 1999).

had to be moved because it did not have a decal authorizing it to be parked in the garage. Id. at 618, 525 S.E.2d at 60. We held that the vehicle was impounded lawfully and in accord with proper police department procedures. Id. at 619, 525 S.E.2d at 60. Appellant contends that Butler is distinguishable because the decision to impound the vehicle in that case was partly based on the second officer's knowledge. This is a distinction without a difference. Instead, Butler supports our holding in this case that it was reasonable for Avery to impound the vehicle given his firsthand knowledge of the location and the other circumstances surrounding appellant's continued use of the vehicle. Under the facts of this case, the police could not allow appellant's car which he had driven for at least five weeks with defective equipment to either be driven further or remain on private property. Accordingly, we find that appellant's automobile was lawfully impounded and that the inventory search was proper.

### III. MOTION *IN LIMINE*

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Crest v. Commonwealth, 40 Va. App. 165, 170, 578 S.E.2d 88, 90 (2003).

Appellant next contends that the trial court erred in denying his motion *in limine* to exclude evidence of the BOL which advised Avery that appellant had brandished a shotgun and put it in the trunk of his car the week before the stop. Appellant argues that the evidence was irrelevant and inadmissible hearsay and that even if it was relevant, its relevance was outweighed by its prejudicial effect. We hold that the trial court did not abuse its discretion in admitting the evidence.

"[T]he hearsay rule does not operate to exclude evidence of a statement, request, or message offered for the mere purpose of explaining . . . the conduct of the person to whom it was

made." Fuller v. Commonwealth, 201 Va. 724, 729, 113 S.E.2d 667, 670 (1960). This was clearly the limited purpose for its admissibility in the instant case.

In Fuller, an assault victim went to a police station and told officers that he had been hit on the head with an object at a certain address and that a woman there might be dead. Id. at 725, 113 S.E.2d at 668. The Court upheld the admissibility of the evidence since it was "admitted not for the purpose of showing the guilt or innocence of the defendant; but for the purpose of showing the reason for the police officers' action in arresting him." Id. at 729, 113 S.E.2d at 670. See also Upchurch v. Commonwealth, 220 Va. 408, 258 S.E.2d 506 (1979) (allowing a report of a burglary in progress as evidence of what prompted an officer to respond to the burglary); Garrison v. Commonwealth, 36 Va. App. 298, 549 S.E.2d 634 (2002) (allowing a statement from appellant's co-worker concerning his whereabouts as evidence of why officer issued a BOL for him); Weeks v. Commonwealth, 248 Va. 460, 450 S.E.2d 379 (1994) (allowing testimony that one police officer told another that appellant shot a state trooper to explain the officer's decision to arrest appellant).

In the instant case, the trial court admitted evidence of the BOL for the limited purpose of showing "what this police officer did upon receiving information; not whether or not it was true one week earlier." He gave a detailed limiting instruction that encompassed the dictates of Fuller and Upchurch:

> Ladies and gentlemen, whether or not this incident was reported or is true or not is not the issue; it's only being offered to you for your consideration to show what this police officer did upon receiving that information; not whether or not it was true one week earlier.

The trial court did not abuse its discretion in admitting the evidence.

Accordingly, we affirm the judgment of the trial court.

Affirmed.