COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Alston and Huff
Argued at Chesapeake, Virginia


CEON MAURICE FAUNTLEROY

                                         OPINION BY
v.       Record No. 1084-12-1        JUDGE RANDOLPH A. BEALES
                                         JULY 30, 2013

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Randall D. Smith, Judge

Kathleen A. Ortiz, Public Defender (Office of the Public Defender,
on brief), for appellant.

Kathleen B. Martin, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Ceon Maurice Fauntleroy (appellant) appeals the trial court's pre-trial denial of his

motion to suppress illegal drugs that were seized from his vehicle during an inventory search by

the police. Appellant argues on appeal that his vehicle was not lawfully impounded, and, thus,

he contends that the resulting inventory search of his vehicle violated the Fourth Amendment.

For the following reasons, we find the trial court did not err in denying appellant's motion to

suppress, and we remand the matter to the trial court for the limited purpose of correcting a

clerical error in the sentencing order.[1]

---

[1] According to its sentencing order entered on June 11, 2012, appellant was convicted of
(1) felony possession of a Schedule I or Schedule II controlled substance with intent to distribute,
second offense, see Code § 18.2-248; and (2) misdemeanor possession of marijuana *with intent
to distribute*, see Code § 18.2-248.1. However, according to the trial court's "Day Two Bench
Trial Order" (entered February 13, 2012) and its "PSR Referral Order" (entered March 19,
2012), the trial court granted appellant's motion to strike the charge of possession of marijuana
with intent to distribute at the close of the Commonwealth's case-in-chief – and instead found
that the Commonwealth had established a *prima facie* case as to the lesser-included offense of
*simple possession* of marijuana. Furthermore, the March 19, 2012 "PSR Referral Order" plainly

## I. BACKGROUND

Under settled principles of appellate review, we view "the evidence in the light most favorable to the Commonwealth, 'as we must since it was the prevailing party'" in the trial court. Beasley v. Commonwealth, 60 Va. App. 381, 391, 728 S.E.2d 499, 504 (2012) (quoting Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004)). Since the Commonwealth prevailed below, it is also given "the benefit of all reasonable inferences fairly deducible from the evidence." Anderson v. Commonwealth, 279 Va. 85, 90, 688 S.E.2d 605, 607 (2010).

On February 13, 2011, at about 10:00 p.m., City of Chesapeake Police Officers James Rich, David Chadwick, and B.C. Ring stopped appellant's 2000 Infinity G35 vehicle after observing that it did not have an illuminated high-mount brake light. Appellant has never argued that his vehicle was not required to have a functioning high-mount brake light or that the initiation of the traffic stop was unlawful in any way.

Officer Rich, whose testimony comprised the entirety of the evidence at the suppression hearing, testified that appellant stopped his vehicle "in the middle of the roadway right at 20th Street and D Street." Appellant was the only occupant. Officer Rich heard appellant tell Officer Chadwick that he had disabled the high-mount brake light "because it wasn't working." As Officer Chadwick returned to the patrol car "to run [appellant's] information" in the computer, Officer Rich observed that the inspection sticker on the windshield of appellant's vehicle "appeared like it possibly could have been altered." Officer Rich testified that the inspection

---

indicates that the trial court found appellant guilty of "PWID Schedule I or Schedule II Controlled Substance – 2nd Offense (F)" and "Possession of Marijuana (M)." Thus, the June 11, 2012 sentencing order incorrectly states that appellant was convicted of misdemeanor possession of marijuana with intent to distribute – rather than misdemeanor simple possession of marijuana. Accordingly, we remand the matter to the trial court for the sole purpose of correcting the sentencing order to reflect that appellant was convicted of misdemeanor possession of marijuana. Appellant does not contest the $250 fine for his possession of marijuana conviction, for which he was not sentenced to any jail time.

sticker was "wrinkled," that its "corners were peeling," and that it "had all the indications that I have seen before of inspection stickers that have been taken off of vehicles and put back on" other vehicles.

Officer Rich further testified that appellant did not have the "pink slip" that is issued along with a valid inspection sticker decal. It is undisputed for purposes of appeal that, after Officer Rich made these observations, appellant agreed to step out of the vehicle and gave the officers permission to enter the vehicle in order to look at the back of the inspection sticker to confirm that it was authentic and properly issued to appellant's Infinity vehicle. [2] However, Officer Ring, who initially tried to read what was written on the back of the inspection sticker, could not do so because the writing was very faded on that side. Officer Rich testified that, with Officer Ring "standing outside the windshield, illuminating [it] from the outside," Officer Rich was finally able to determine that the inspection sticker had actually been issued to a Mercury vehicle – not appellant's Infinity.

Officer Rich testified that, when he told appellant that the inspection sticker had been issued for another vehicle, appellant admitted, "All right. It's a hot sticker." Appellant further admitted to the officer that he purchased the inspection sticker in Norfolk for $30. At this point,

---

[2] At the suppression hearing, Officer Rich explained the significance of the information found on the back of an inspection sticker, testifying:

> [O]n the back of the Virginia state inspection sticker the only information that's on that sticker is supposed to be the information for the vehicle you are in. In other words, on the back it should have the vehicle's make, model, and VIN number all on the sticker itself. *If you alter or change, take that sticker off in any way, you're actually supposed to void that sticker. It's not sufficient for any other vehicles in the state of Virginia or anywhere.* So if you go into the vehicle and look at the back of that sticker, you should be able to read the vehicle information that you're in and the VIN number for the vehicle that it's on.

(Emphasis added).

Officer Rich decided to call a tow truck to take the vehicle from the scene and to conduct an inventory search of the vehicle prior to its towing. Officer Rich was never asked at the suppression hearing whether the police department had a policy for determining when vehicles should be impounded. He did testify that the inventory search of appellant's vehicle occurred in accordance with the police department's standard procedure. During the inventory search, illegal drugs were found in the center console of appellant's vehicle, and, thereafter, illegal drugs were discovered in the vehicle's trunk as well.

On cross-examination, Officer Rich testified that he would have simply issued a summons to appellant and released appellant with the vehicle *if* the only problem with appellant's vehicle had been the failure to have an illuminated high-mount rear brake light. However, Officer Rich made clear on cross-examination that appellant's possession of an inspection sticker that had been issued for another vehicle significantly changed the situation – especially given the officer's understanding that such conduct is a Class 1 misdemeanor offense.[3] Officer Rich indicated that there was some discussion among the officers at the scene concerning

---

[3] Code § 46.2-1172 states:

> No person shall remove any inspection sticker or any paper issued by the Superintendent in connection with vehicle safety inspections from the custody of any person to whom the same has been issued by or under the authority of the Superintendent of State Police. *Nor shall any person have any such sticker or paper in his possession or use otherwise than as authorized by the Superintendent.* In any case where the Superintendent has suspended or revoked the designation of any official inspection station designated by him, such station shall surrender possession to the Superintendent or his duly authorized representative all inspection stickers and other forms and papers used in connection with safety inspection of vehicles on or before the effective date of such suspension or revocation. Any person violating the provisions of this section shall be guilty of a Class 1 misdemeanor.

(Emphasis added). Appellant was convicted of this offense in the general district court, and he withdrew his appeal of that conviction at the suppression hearing in the trial court.

whether to issue appellant a summons for the inspection sticker offense or to arrest him for that offense. However, Officer Rich explained during cross-examination that the officers' determination of how they would charge appellant for the inspection sticker offense did not affect the status of appellant's *vehicle*. During the following exchange with appellant's counsel, Officer Rich testified at the suppression hearing:

> Q: You could have written him two summonses and let him go, correct?
>
> A: *He* would have been free to go, but *his car wasn't*. It was in the middle of the roadway. It was . . . *not parked legally* on the side of the road, and it was *not drivable* from that point, on.

(Emphasis added). While Officer Rich testified that there were other instances in which he would permit another occupant to drive away in a vehicle – assuming, unlike here, that another licensed occupant was present – he explained that, "in this case, *the vehicle itself could not leave* because of the condition, because of the inspection sticker." (Emphasis added).

During oral argument on the motion to suppress, appellant's trial counsel argued that the police officers should "have cited two summonses and *released him* to drive away with his car, because those are traffic summonses, and there [are] no indicia that he was not going to answer those two summonses at any later time." (Emphasis added). Thus, appellant's trial counsel contended that the police unlawfully "seized his vehicle based on the two traffic citations."

Denying appellant's motion to suppress, the trial court explained that the pertinent issue here was "not a seizure of the defendant, but a seizure *of his automobile*." (Emphasis added). Reviewing the totality of the circumstances presented at the suppression hearing, the trial court found that it had "not heard anything to say that at that time it was unlawful to seize the vehicle." Thus, the trial court found that the inventory search of appellant's vehicle was lawful, and it ruled, therefore, that the illegal drugs discovered as a result of the inventory search should not be suppressed from the trial evidence.

## II. ANALYSIS

On appeal from the denial of a motion to suppress, "we apply an established standard of review." Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002). "[I]n considering a trial court's ruling on a suppression motion, we view the evidence in the light most favorable to the prevailing party below, the Commonwealth in this instance," and this Court's "review of the record includes evidence adduced at both the trial and the suppression hearing." Greene v. Commonwealth, 17 Va. App. 606, 608, 440 S.E.2d 138, 139 (1994) (internal quotation marks, alterations, and citations omitted).

> A defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review *de novo* on appeal. In making such a determination, we give deference to the factual findings of the trial court and independently determine whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment. The defendant has the burden to show that the trial court's denial of his suppression motion, when the evidence is considered in the light most favorable to the Commonwealth, was reversible error.

Murphy, 264 Va. at 573, 570 S.E.2d at 838-39 (citations omitted); see Ornelas v. United States, 517 U.S. 690, 699 (1996) ("[W]e hasten to point out that a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.").

### A. THE INVENTORY SEARCH EXCEPTION

Appellant's assignment of error on appeal alleges that the trial court erred in denying his motion to suppress because he claims that his vehicle "was not *lawfully impounded* and thus the resulting inventory search violated" the Fourth Amendment. (Emphasis added). "'[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions.'" West v. Commonwealth, 54 Va. App. 345, 352, 678 S.E.2d 836,

839 (2009) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)); see Girardi v. Commonwealth, 221 Va. 459, 463, 270 S.E.2d 743, 745 (1980). "[O]ne of the recognized exceptions to the warrant requirement is the inventory search" exception. Girardi, 221 Va. at 463, 270 S.E.2d at 745-46.

The inventory search exception derives from what the United States Supreme Court has called law enforcement's "community caretaking functions." See South Dakota v. Opperman, 428 U.S. 364, 369 (1972). In Reese v. Commonwealth, 220 Va. 1035, 265 S.E.2d 746 (1980), the Supreme Court of Virginia explained:

> This exception to the Fourth Amendment's warrant requirement is based upon the need to protect the owner's property, to protect the police against claims of lost or stolen property, to protect the police from physical danger, and to protect the public from dangerous instrumentalities or substances that may be pilfered from an impounded vehicle. *Because inventories promote such important interests and, not being investigatory in purpose, do not implicate the interests which are protected when searches are conditioned on warrants, inventory searches are not unreasonable within the meaning of the Fourth Amendment.* Contraband or other evidence of crime discovered in an inventory search may be seized without warrant and introduced into evidence at trial.

Id. at 1039, 265 S.E.2d at 749 (emphasis added) (internal quotation marks and citation omitted); see also Servis v. Commonwealth, 6 Va. App. 507, 371 S.E.2d 156 (1988) (discussing circumstances in which the inventory search exception applies).

B. THE SCOPE OF OUR REVIEW ON APPEAL

In Williams v. Commonwealth, 42 Va. App. 723, 594 S.E.2d 305 (2004), this Court held that

> the police may conduct a warrantless inventory search of a vehicle provided the following conditions are met: 1) the vehicle must be lawfully impounded; 2) the impoundment and subsequent search must be conducted pursuant to standard police procedures; and 3) the impoundment and subsequent search must not be a pretextual surrogate for an improper investigatory motive.

- 7 -

Id. at 731, 594 S.E.2d at 309; see also King v. Commonwealth, 39 Va. App. 306, 310-11, 572

S.E.2d 518, 520 (2002) (same).

In this case, appellant's trial counsel asserted below *only* that appellant's vehicle was

unlawfully "seized." Given that the inventory search here occurred before the tow truck arrived

to impound appellant's vehicle, we construe trial counsel's argument to raise essentially the same

legal issue that is presented in appellant's assignment of error challenging the lawfulness of the

vehicle's impoundment. See Girardi, 221 Va. at 464, 270 S.E.2d at 746. However, appellant's

argument on appeal that the evidence failed to show that his vehicle was impounded pursuant to

standard police procedure was never raised in the trial court.[4]

During oral argument before this Court, counsel for appellant asserted that the concept of

a lawful impoundment – which is the issue raised in appellant's assignment of error on appeal –

encompasses *all* of the considerations set forth in Williams (and King) that are quoted above.[5]

We disagree. This Court's opinions in Williams and King both announce several separate and

distinct considerations for addressing whether a lawful inventory search has occurred. See

Williams, 42 Va. App. at 731, 594 S.E.2d at 309; King, 39 Va. App. at 310-11, 572 S.E.2d at

520. Thus, an argument that a vehicle is unlawfully impounded does not, standing alone,

preserve an argument that the vehicle was not impounded pursuant to standard police procedure.

Therefore, appellant's argument on appeal that his vehicle was not impounded pursuant to

standard police procedure is barred under Rule 5A:18. Furthermore, while appellant requests

that this Court apply the ends of justice exception to Rule 5A:18, that exception is inapplicable

---

[4] In this case, Officer Rich testified that the actual inventory search was conducted pursuant to standard police procedures, and appellant never challenged this testimony before the trial court.

[5] Appellant's counsel expressly acknowledged during oral argument before this Court that the decision to impound and conduct an inventory search of the vehicle was not pretextual. Thus, this issue is not before this Court on appeal.

here because appellant has not "affirmatively show[n] that a miscarriage of justice has occurred'" in this case. Howard v. Commonwealth, 55 Va. App. 417, 425, 686 S.E.2d 537, 541 (2009) (quoting Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997)).

Accordingly, as in Servis, 6 Va. App. at 521, 371 S.E2d at 163, the "crux of the issue in this case is whether [appellant's] car was lawfully impounded." In this case, that question is the only issue that has been preserved for appeal.

### C. THE IMPOUNDING OF APPELLANT'S VEHICLE WAS OBJECTIVELY REASONABLE

"The touchstone of the Fourth Amendment is reasonableness." Florida v. Jimeno, 500 U.S. 248, 250 (1991) (citation omitted); see Robinson v. Commonwealth, 273 Va. 26, 39, 639 S.E.2d 217, 224 (2007). "*Reasonableness*, in turn, is measured in *objective terms* by examining the *totality of the circumstances*." Ohio v. Robinette, 519 U.S. 33, 39 (1996) (emphasis added). The same reasonableness standard applies here. See Opperman, 428 U.S. at 373. Thus, "[w]e must consider 'not whether there was a need for the police to impound [the] vehicle but, rather, whether the police officer's decision to impound was reasonable under the circumstances.'" Williams, 42 Va. App. at 731, 594 S.E.2d at 309 (quoting United States v. Brown, 787 F.2d 929, 932 (4th Cir. 1986)).

Viewing the totality of the circumstances in this case in the light most favorable to the Commonwealth, as we must because it was the prevailing party below, Officer Rich's decision to impound appellant's vehicle was objectively reasonable. Several circumstances, each mounting upon the others, support this conclusion.

First, during a lawful traffic stop necessitated by the failure of appellant's vehicle to have a functioning high-mount rear brake light, Officer Rich determined that appellant's vehicle was displaying a safety inspection sticker that had actually been issued for *another* vehicle. Appellant's possession of that inspection sticker was unauthorized. Second, given Officer Rich's

knowledge that unauthorized possession of an inspection sticker is a Class 1 misdemeanor offense under Code § 46.2-1172, an objectively reasonable officer could certainly infer that appellant fraudulently possessed the sticker in order to avoid submitting his vehicle to a valid safety inspection at an authorized inspection station.[6]  Third, Officer Rich plainly testified that, due to the vehicle's unknown inspection status, appellant's vehicle was deemed "not drivable" and "could not leave" the scene.  It is clear from the transcript of the suppression hearing that the trial court found the officer's testimony credible and gave it significant weight, as the trial court was entitled to do.  Fourth, given Officer Rich's testimony that appellant had illegally parked his vehicle "in the middle of the roadway right at 20th Street and D Street," the police clearly had the authority to seize and remove the vehicle from the street so that it would not impede traffic.  See Opperman, 428 U.S. at 369 ("The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.").

This Court's decision in Fisher v. Commonwealth, 42 Va. App. 395, 592 S.E.2d 377 (2004), is highly instructive on the analysis in this case.  There, Fisher's vehicle did not display an inspection or rejection sticker on the windshield.  After admitting to a police officer that his vehicle had failed inspection and that he had removed the refusal sticker after receiving several citations, Fisher produced from his glove compartment several summonses that he had been given for the rejection sticker.  Id. at 399, 592 S.E.2d at 378-39.  Holding that the decision to impound Fisher's vehicle was reasonable under the totality of the circumstances, this Court

_____

[6] Code § 46.2-1157(A) requires the owner of "any motor vehicle . . . operated or parked on a highway within the Commonwealth" to "submit his vehicle to an inspection of its mechanism and equipment by an official inspection station, designated for that purpose," and that statute also prohibits any such owner from "fail[ing] to submit a motor vehicle . . . to such inspection or fail[ing] or refus[ing] to correct or have corrected in accordance with the requirements of this title any mechanical defects found by such inspection to exist."  See Code § 46.2-1158 (requiring such inspections "within 12 months of the month of the first inspection and at least once every 12 months thereafter").  Furthermore, Code § 46.2-1157(C) states, "Each day during which such motor vehicle . . . is operated or parked on any highway in the Commonwealth after failure to comply with this law shall constitute a separate offense."

stated in Fisher that "the presence of a rejection sticker indicates defective equipment," explaining:

> "Virginia law requires that all cars registered and operated in Virginia undergo an annual safety inspection, regardless of the city or county in which the owner resides. *A vehicle bearing a rejection sticker has expressly been found to have mechanical defect of such magnitude that the legislature has declared the vehicle unsafe to operate until the defect is repaired.*"

Id. at 402-03, 592 S.E.2d at 380 (emphasis added) (quoting Reel v. Commonwealth, 31 Va. App. 262, 269, 522 S.E.2d 881, 884 (2000)). Thus, Fisher's "continued use of a defective vehicle provided a reasonable basis for [the officer] to impound" the vehicle. Id. at 403, 592 S.E.2d at 381.

The reasonable concern of ensuring the safety of Virginia's motorists, which this Court addressed in Fisher, was arguably an even graver concern in this case. Although Fisher's vehicle had failed its inspection, the evidence indicated that Fisher had at least *submitted* his vehicle to a safety inspection. By contrast, nothing in the record in this case would give any indication that appellant even cared enough about the safety of his fellow motorists to submit his vehicle to an inspection.[7] Moreover, while Officer Rich knew that the high-mount rear brake light on appellant's vehicle was not functioning, the officer certainly was not required to believe that appellant had intentionally (and fraudulently) purchased a "hot" inspection sticker simply to avoid a safety inspection due to that one, seemingly minor defect.[8] As the United States

---

[7] Furthermore, appellant's fraudulent display of a safety inspection sticker that has been issued for *another* vehicle is classified as a more serious offense than Fisher's removal of the rejection sticker that had been issued for Fisher's *own* vehicle. Compare Code § 46.2-1157 (classifying the unauthorized possession of an inspection sticker as a Class 1 misdemeanor), with Fisher, 42 Va. App. at 403 n.5, 592 S.E.2d at 380 n.5 (noting that Fisher's failure to display a valid inspection sticker was potentially a Class 3 misdemeanor for a first offense).

[8] Even if appellant had provided a reason why his vehicle had not been properly and validly inspected, Officer Rich was not required to accept such an explanation. See Fisher, 42 Va. App. at 403, 592 S.E.2d at 381 ("[Fisher] did not give [the officer] a specific reason for the

Supreme Court has explained, "[P]ractical people [have] formulated certain commonsense conclusions about human behavior; jurors as factfinders are permitted to do the same – and so are law enforcement officers." United States v. Cortez, 449 U.S. 411, 418 (1981).

Thus, an experienced law enforcement officer (such as Officer Rich) was permitted to make reasonable inferences from appellant's unauthorized possession of a vehicle inspection sticker that was issued for another vehicle. The officer could reasonably believe that appellant's vehicle – like Fisher's vehicle – quite likely had a significant defect that rendered it unsafe to operate on Virginia's highways until it was repaired. See Fisher, 42 Va. App. at 402-03, 592 S.E.2d at 380. Similarly, a reasonable officer could infer that appellant simply did not intend to have the vehicle inspected, given appellant's fraudulent display of an inspection sticker that had been issued for another vehicle. Officer Rich reasonably determined that the vehicle – which was illegally parked in the middle of the road, thereby impeding traffic – could not safely be released to appellant under the circumstances.

Relying on this Court's opinions in Williams and King, appellant argues on brief that the evidence fails to show that his vehicle was impounded due to an objectively reasonable "concern for the safekeeping of the car." See Williams, 42 Va. App. at 732, 594 S.E.2d at 310 (holding that the police reasonably impounded Williams' vehicle when "the owner of the vehicle could not be identified and no one was available at the scene to drive the vehicle, which had a broken window, to another, safer location"); King, 39 Va. App. at 311, 572 S.E.2d at 521 (holding that the impounding of King's vehicle was objectively unreasonable because it was based on the police officer's "subjective view that he 'wouldn't put a vehicle there and just leave it there'").

rejection, but even if he had, [the officer] was not required to accept it."). Furthermore, the record gives no indication that appellant requested to make alternative arrangements for removing the vehicle, and the police officers were not required to ask appellant if he wished to have his vehicle moved to another location. Williams, 42 Va. App. at 733-34, 594 S.E.2d at 310-11.

We disagree with appellant's argument because it overlooks this Court's decision in <u>Servis</u>, 6 Va. App. at 521, 371 S.E.2d at 163, which explains that there is not just one permissible reason for lawfully impounding a vehicle.

Citing the United States Supreme Court's decision in <u>Opperman</u>, this Court explained in <u>Servis</u> that the authority of the police to seize and remove a vehicle that is impeding traffic or threatening public safety is well established. <u>Id.</u>; <u>see</u> <u>Opperman</u>, 428 U.S. at 368-69. In this case, Officer Rich properly acted under this well-established authority discussed in <u>Servis</u> – given Officer Rich's objectively reasonable belief that appellant's vehicle was "not drivable" (due to its display of an invalid inspection sticker) and his undisputed testimony that appellant's vehicle was parked in "the middle of the road" impeding traffic. However, the defendant's vehicle in <u>Servis</u> was not impeding traffic or threatening public safety when it was impounded. <u>Servis</u>, 6 Va. App. at 523, 371 S.E.2d at 164. Thus, in <u>Servis</u>, this Court then proceeded to explain that, under the appropriate circumstances, the police may impound a vehicle – even if the vehicle is *not* impeding traffic or threatening public safety – so long as the vehicle is impounded "solely to protect a defendant's property when he is arrested away from home." <u>Id.</u> at 521, 371 S.E.2d at 163; <u>see</u> <u>Cabbler v. Commonwealth</u>, 212 Va. 520, 522-23, 184 S.E.2d 781, 782-83 (1971). The decisions in <u>Williams</u> and <u>King</u> both turn on this *alternative* rationale for impounding a vehicle that is discussed in <u>Servis</u>.

However, *in this case*, appellant's vehicle was illegally parked in the middle of the road – not near the curb on the side of the road – and case law plainly holds that a police officer has the "clear authority" to "seize and remove" a vehicle that is impeding traffic. <u>Servis</u>, 6 Va. App. at 522 n.2, 371 S.E.2d at 164 n.2; <u>see</u> <u>Opperman</u>, 428 U.S. at 369 (explaining that such authority is "beyond challenge"). Furthermore, as discussed above, the vehicle displayed an inspection sticker that had been issued for a different vehicle; appellant admitted fraudulently purchasing

- 13 -

this "hot" inspection sticker rather than submitting his vehicle to a safety inspection; and, therefore, Officer Rich had an objectively reasonable basis for believing that the vehicle "was not drivable" at that point. To conclude that Officer Rich somehow lacked authority under the Fourth Amendment to impound this vehicle (as appellant urges this Court to do) would require us to disregard binding precedent and basic common sense.

### III. CONCLUSION

Officer Rich's decision to impound appellant's vehicle was reasonable under the totality of the circumstances in the record. As appellant's vehicle was lawfully impounded, the resulting inventory search of the vehicle (which appellant concedes was conducted pursuant to standard police procedures) did not violate the Fourth Amendment. Therefore, the trial court did not err in denying appellant's motion to suppress the illegal drugs that were discovered as a result of the inventory search. Accordingly, for the foregoing reasons, we affirm appellant's conviction for possession with the intent to distribute a Schedule I or II controlled substance (second offense), and we remand the matter to the trial court for the sole purpose of correcting the sentencing order to reflect that appellant was also actually convicted of misdemeanor possession of marijuana – not misdemeanor possession of marijuana with the intent to distribute.

Affirmed and remanded.