COURT OF APPEALS OF VIRGINIA

Present:   Judges Russell, AtLee and Malveaux
Argued at Norfolk, Virginia

RONALD LANARD MALONE

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0989-17-1                      JUDGE WESLEY G. RUSSELL, JR.
                                                    JUNE 12, 2018

COMMONWEALTH OF VIRGINIA

            FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                      Junius P. Fulton, III, Judge[1]

            David H. Moyer for appellant.

            Liam A. Curry, Assistant Attorney General (Mark R. Herring,
            Attorney General, on brief), for appellee.


        Ronald Lanard Malone, appellant, was convicted of possession of a firearm by a convicted

felon and possession of a concealed weapon.  On appeal, he claims that the trial court erred in

denying his motion to suppress because the officers detained and seized him without a reasonable,

articulable suspicion of criminal activity and conducted an unlawful frisk of his person.

Accordingly, he argues the firearm they discovered should have been excluded as the fruit of the

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The Honorable John R. Doyle, III, presided over the motion that is the subject of this appeal.

poisonous tree. He also asserts that the trial court erred in applying the "new and distinct crime" exception to the exclusionary rule in denying his motion to suppress the weapon.[2]

BACKGROUND

In reviewing the trial court's denial of a motion to suppress, we view the evidence in the light most favorable to the Commonwealth as the prevailing party below. Hairston v. Commonwealth, 67 Va. App. 552, 560, 797 S.E.2d 794, 798 (2017). Our review is not limited to the evidence offered at the suppression hearing, but rather, includes evidence introduced at trial. Fauntleroy v. Commonwealth, 62 Va. App. 238, 244, 746 S.E.2d 65, 68 (2013).

So viewed, the evidence establishes that, on November 19, 2015, Officer Davis of the Norfolk Police Department responded to a call that there were "three to five black males on the 300 block of 28th Street who were passing around a firearm." The call indicated that one of the men was wearing a pink sweatshirt while the rest were dressed in all black. Davis arrived at the location in less than a minute, without lights and siren. The individuals dispersed when they saw Davis. Davis determined that appellant was the man in the light-colored sweatshirt. When backup arrived, Davis instructed a newly arrived officer, Officer Clingerman, to stop appellant as appellant was about to enter an apartment on 29th Street. Davis testified that this was a high crime area where "[a]lmost every single day there was a gunshot call from that area."

Clingerman stopped appellant as appellant was about to enter the apartment. Clingerman requested and received appellant's identification. Appellant was very cooperative until he was told that the officers needed to pat him down for weapons. Davis testified that appellant "refused

---

[2] Appellant also was charged with possession of cocaine with the intent to distribute and possession of a firearm while in possession of cocaine. The trial court granted appellant's motion to suppress the cocaine and granted the Commonwealth's motions to *nolle prosequi* the charges of possession of cocaine and possession of a firearm while in possession of cocaine. Appellant also was charged with assault and battery of a law enforcement officer, and the trial court found him not guilty of that offense. Accordingly, those issues are not part of this appeal.

over and over again." A third officer, Officer Kiehl, arrived at the scene and attempted to place appellant's hands behind his back. Appellant motioned with his head to the left and asked if they could "do this over here?" Davis responded no, but Kiehl said yes and began to lead appellant down the street. As appellant began walking to his left, he took off running. After a few steps, Davis was able to grab appellant's sweatshirt. Appellant spun around and struck Davis in his right temple. Appellant then hit Davis in his nose. As all three officers attempted to subdue appellant, Clingerman observed appellant reach towards his waistband. Clingerman's hand followed appellant's hand, and Clingerman felt the butt of a handgun and shouted "gun!" The officers cuffed appellant and recovered a Sig Sauer SP2022 40 caliber pistol that appellant had concealed in his pants. Davis testified at trial that when he saw the gun, it was in appellant's right hand.[3] A subsequent search of appellant led to the recovery of cocaine in appellant's pocket. Clingerman's body camera footage was entered into evidence at both the suppression hearing and the trial.

After hearing appellant's motion to suppress the firearm and the cocaine, the court granted the motion as to the drugs, but denied the motion to suppress the gun. The trial court reasoned that the initial stop and detention of appellant was unlawful and that the subsequent recovery of the drugs should be suppressed as they were recovered as a result of an unlawful detention.[4] However, the trial court denied the motion to suppress the gun, finding that appellant "produced a firearm while he was resisting the officers at which point the officers seized the

---

[3] Clingerman testified that the gun was not in appellant's hand. Given that we review the facts in the light most favorable to the Commonwealth as the prevailing party, Hairston, 67 Va. App. at 560, 797 S.E.2d at 798, the conflict is resolved in the Commonwealth's favor, meaning that our review necessarily assumes that appellant had the gun in his hand.

[4] The Commonwealth did not appeal the trial court's granting of the motion to suppress the drugs. Accordingly, that ruling is not before us in this appeal.

firearm" and that this conduct by appellant represented a separate and distinct offense. Therefore, the gun was legally seized. The court explained:

> [T]he officers were about to do the pat down of the defendant. The defendant broke and ran. They tackled him, attempted to stop him. The defendant resisted. There was a scuffle. A fight broke out so to speak between the defendant and the officers during the course of which the defendant was reaching for a gun, which was made apparent and viewable by the officers.
>
> When they see him reaching for the gun, the defendant was attempting to get the gun in his hand and hold it in his hand where it could be actually fired.
>
> When the officers saw the defendant attempting to get ahold of the gun in his hand, that's when they discovered the gun and seized the gun.

This appeal follows. In two related assignments of error, appellant argues that the trial court erred in denying his motion to suppress the firearm. He contends that the trial court erred in applying the new and distinct crime exception, and therefore, given that the officers lacked reasonable, articulable suspicion to detain him in the first instance, the firearm was inadmissible as the fruit of the poisonous tree.

ANALYSIS

I. Standard of Review

As noted above, "we 'consider the facts in the light most favorable to the Commonwealth, the prevailing party at trial.'" Hairston, 67 Va. App. at 560, 797 S.E.2d at 798 (quoting Malbrough v. Commonwealth, 275 Va. 163, 168, 655 S.E.2d 1, 3 (2008)). Our review of the evidence is not limited to the evidence adduced at the suppression hearing, but includes the evidence adduced at trial. Fauntleroy, 62 Va. App. at 244, 746 S.E.2d at 68.

"It is the appellant's burden to show that when viewing the evidence in such a manner, the trial court committed reversible error." Hairston, 67 Va. App. at 560, 797 S.E.2d at 798. If challenged, "[t]he question of whether a . . . seizure violated the Fourth Amendment is 'a mixed

- 4 -

question of law and fact that we review *de novo'* on appeal." Id. (quoting Harris v. Commonwealth, 276 Va. 689, 694, 668 S.E.2d 141, 145 (2008)). "An appellate court independently reviews the trial court's application of relevant legal principles," but in doing so, "the Court is 'bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence.'" Id. at 560-61, 797 S.E.2d at 798 (quoting Malbrough, 275 Va. at 168, 655 S.E.2d at 3). Further, "we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." Id. at 561, 797 S.E.2d at 798 (quoting McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*)).

## II. Initial Detention of Appellant

The trial court correctly found that the officers initially lacked reasonable, articulable suspicion to detain appellant and subject him to a pat down, but attempted to pat him down anyway. Neither party challenges the trial court's conclusion in this regard. Thus, the record establishes that: (1) the officers lacked reasonable, articulable suspicion when they first attempted to pat down appellant; and (2), at the point of the initial physical contact, appellant was not subject to a full, custodial arrest, but rather, only had been subjected to a detention.[5] See Neff v. Commonwealth, 63 Va. App. 413, 416, 758 S.E.2d 87, 88 (2014) ("The unchallenged finding of the trial court is now the law of the case and binding on the parties for purposes of appeal." (internal quotation marks and citations omitted)).

## III. New and Distinct Crime Exception

Noting that the officers lacked reasonable, articulable suspicion when they attempted to detain him, appellant argues that the firearm subsequently discovered should have been

---

[5] In his brief in this Court, appellant refers to the initial physical contact by the officers as "an unlawful stop and frisk," a "restr[iction of] appellant's freedom of movement without a reasonable and articulable suspicion of criminal conduct," and "a pat down search." He never characterizes the interaction as amounting to a custodial arrest.

suppressed as "the fruit of the poisonous tree." However, as the United States Supreme Court has observed, evidence is not excludable as "'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police." Wong Sun v. United States, 371 U.S. 471, 488 (1962). Rather, the "question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which [the] instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" Id. (quoting John M. Maguire, Evidence of Guilt 221 (1959)).

In determining whether evidence must be excluded in such circumstances, the United States Supreme Court has recognized that exclusion should be an appellate court's "'last resort, not [its] first impulse,' and . . . precedents establish important principles that constrain application of the exclusionary rule." Herring v. United States, 555 U.S. 135, 140 (2009) (quoting Hudson v. Michigan, 547 U.S. 586, 591 (2006)). "Evidence is obtained by means sufficiently distinguishable to be admissible despite an illegality by the authorities if it is 'evidence attributed to an independent source' or 'evidence where the connection has become so attenuated as to dissipate the taint.'" Foltz v. Commonwealth, 58 Va. App. 107, 117, 706 S.E.2d 914, 919 (2011) (quoting Warlick v. Commonwealth, 215 Va. 263, 266, 208 S.E.2d 746, 748 (1974)).

Courts have recognized several circumstances in which the illegal police conduct is sufficiently attenuated from the discovery of the evidence to permit the evidence's ultimate admission into evidence. One such circumstance is the "new and distinct crime" exception. In its simplest formulation, this exception provides that "'if a person engages in new and distinct criminal acts' during an allegedly unlawful police encounter, 'the exclusionary rule does not apply . . . .'" Testa v. Commonwealth, 55 Va. App. 275, 283, 685 S.E.2d 213, 216 (2009) (quoting Brown v. City of Danville, 44 Va. App. 586, 600, 606 S.E.2d 523, 530 (2004)); see also

Neff, 63 Va. App. at 415 n.2, 758 S.E.2d at 88 n.2 (recognizing that the exclusionary rule does not apply when a new and distinct crime occurs during an allegedly unlawful detention).

In denying the motion to suppress, the trial court found that the new and distinct crime exception applied. This was based on appellant's attempted flight, use of force, and attempt "to get [the gun] . . . where it could be used in the physical altercation with the officers." From this, the trial court reasoned that the gun was not discovered as a result of the planned frisk that never took place, but rather, was discovered because appellant committed "a separate and distinct offense" when he went for the gun during his subsequent altercation with the officers.

Here, despite the illegality of the officers' attempt to detain and frisk him, appellant was not privileged to use force to repel the unlawful detention. Although a citizen may use reasonable force to repel an unlawful arrest, see Brown v. Commonwealth, 27 Va. App. 111, 116-17, 497 S.E.2d 527, 530 (1998), he may not do so to repel an unlawful detention and accompanying frisk for weapons. As the Supreme Court has explained,

> [b]ecause a detention is, by its nature, a brief intrusion on an individual's liberty, the provocation resulting from an illegal detention is far less significant than the provocation that attends an illegal arrest. Thus, recognition of a right to resist an unlawful detention would not advance the rationale supporting the common law right to use reasonable force to resist an unlawful arrest, but would only serve to increase the danger of violence inherent in such detentions.

Commonwealth v. Hill, 264 Va. 541, 548, 570 S.E.2d 805, 808-09 (2002).

During oral argument in this Court, appellant acknowledged that his conduct was sufficient to provide probable cause of new and distinct crimes, including the assault and battery for which he was charged.[6] Viewed in the light most favorable to the Commonwealth, the

---

[6] Appellant conceded at oral argument in this Court that his ultimate acquittal on that charge did not prevent it from serving as a new and distinct crime for the purposes of the exclusionary rule exception.

evidence was sufficient to allow a reasonable factfinder to conclude that appellant attempted to use the gun during his altercation with the officers, and thus, the gun was discovered as a result of new and distinct criminal acts and not as a result of the attempted illegal detention. Accordingly, the trial court did not err in applying the new and distinct crime exception, and thus, did not err in denying appellant's motion to suppress.

CONCLUSION

For the reasons stated above, the trial court did not err in denying appellant's motion to suppress. Accordingly, the judgment of the trial court is affirmed.

<u>Affirmed.</u>