COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Chief Judge Huff, Judge Decker and Senior Judge Clements
Argued by teleconference


COMMONWEALTH OF VIRGINIA
                                        MEMORANDUM OPINION[*] BY
v.       Record No. 0104-15-2            JUDGE MARLA GRAFF DECKER
                                                JUNE 23, 2015
HUNTER FRANKLIN HOCUTT


FROM THE CIRCUIT COURT OF HANOVER COUNTY
Patricia Kelly, Judge

Victoria Johnson, Assistant Attorney General (Mark R. Herring,
Attorney General, on briefs), for appellant.

Matthew T. Paulk for appellee.


Hunter Franklin Hocutt (the defendant) was indicted for possession of a Schedule I or II

substance in violation of Code § 18.2-250.  Pursuant to Code §§ 19.2-398 and -400, the

Commonwealth appeals a pretrial ruling granting the defendant's motion to suppress evidence

recovered as a result of the impoundment and inventory search of his vehicle.  The

Commonwealth contends that the impoundment was reasonable because the vehicle was

rendered unsafe by the defendant's failure to maintain liability insurance coverage on it.  The

record, viewed under the appropriate legal standard, supports the conclusion that the seizure of

the vehicle was unreasonable under the Fourth Amendment in light of the language of the

applicable impoundment policy of the law enforcement agency.  Thus, we affirm the circuit

court's suppression of the evidence obtained as a result of that seizure.

_____
[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND[1]

At 9:00 a.m. on March 4, 2014, Deputy D.T. Parrish of the Hanover County Sheriff's Office initiated a traffic stop of the defendant for driving on a suspended license.[2] The defendant, in response, pulled his vehicle off the highway and into a marked parking space at a convenience store. During the course of the stop, Deputy Parrish learned that the defendant's license was "suspended for insurance monitoring."[3] However, Parrish concluded that the defendant probably did not know that his license had been suspended. As a result, the deputy issued the defendant a notice of suspension, not a citation. He also asked whether the defendant's vehicle was insured. The defendant admitted that it was not.

Parrish testified that he "had to" remove the license plates and tow the vehicle because it was "unsafe to operate without insurance." Parrish also testified that because the sheriff's office rather than the owner "initiat[ed] the tow," he was required to inventory the vehicle. At that time, Deputy Parrish did not intend to arrest the defendant. Pursuant to language in the Hanover County Sheriff's Office policy (the sheriff's office policy or the policy) concerning the impoundment and inventory of vehicles,[4] Parrish asked the defendant if he had a "preferred tow company." The

---

[1] On review of a ruling on a motion to suppress, this Court views the evidence in the light most favorable to the party who prevailed below, in this case the defendant. See, e.g., Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). This Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them" and "give[s] due weight to the inferences drawn from those facts" by the trial judge and law enforcement. McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*).

[2] The legitimacy of the stop itself is not in dispute on appeal.

[3] No evidence indicated how long the defendant's license had been suspended.

[4] The Commonwealth introduced into evidence the Hanover County Sheriff's Office Administrative Order 66-2 (rev. March 6, 2009), titled "Towing and Impounding Vehicles" [hereinafter policy].

defendant replied that he did not.[5]  As a result, Parrish contacted "communications" and asked to have the next towing company on the sheriff's office list called to tow the defendant's car.

Deputy Parrish told the defendant that he was going to inventory the vehicle pursuant to sheriff's office policy.  The search resulted in the discovery of a stun gun, an empty firearm holster, marijuana residue, and drug paraphernalia.  Following his arrest, the defendant admitted that he had heroin and additional drug paraphernalia on his person.

The defendant was charged with possession of a controlled substance in violation of Code § 18.2-250.  Prior to trial, he filed a motion to suppress the evidence obtained as a result of the inventory search of his vehicle.  At a hearing on that motion, Deputy Parrish testified to the events summarized above.  At the conclusion of the evidence and argument, the judge granted the motion to suppress.

In the order memorializing her ruling, the judge noted the deputy's statements that the defendant was not in custody prior to the search and that he did not intend to arrest the defendant.  The judge found that the defendant parked his vehicle in a marked space in the convenience store's lot and that no evidence indicated the vehicle was "improperly parked, blocking access or interfering with the flow of traffic."  As a result, the judge concluded that the factual scenarios under which the sheriff's office policy permitted towing and inventory searches did not include the situation at issue, "namely a vehicle in a parking space."  The court further observed a lack of any evidence concerning whether the convenience store was open or closed and whether anyone asked the store's owner if the vehicle could be left in the parking space until the defendant could arrange to have it towed.  Additionally, the court noted a lack of evidence establishing that the defendant gave permission for a "search, inventory or tow" of the vehicle.  The court found that the record

---

[5] Although a cellular telephone was present in the defendant's vehicle, Parrish did not give him the option of making his own arrangements to have "a third party" tow the car.

established, instead, that the deputy merely asked the defendant if he had a preferred towing company. When the defendant responded that he did not, the deputy said he would use the next one on the list and proceeded to inventory the car.

In granting the motion to suppress, the judge observed that the purpose of an inventory search is to protect citizens from losing property and law enforcement from false claims of lost property. She also noted that such a search cannot be used as a "ruse to search . . . for evidence of a crime." Ultimately, the court found that "the Commonwealth failed to establish the need to tow the vehicle" and if the vehicle did not "need to be towed, an inventory search was not permissible." It also found that the defendant was not in custody and "should have been given the opportunity to retrieve property from his vehicle prior to having it towed by law enforcement."

## II. ANALYSIS

The Commonwealth contends on appeal that the circuit court erred in granting the motion to suppress. It argues that the court erroneously concluded that the evidence failed to establish a need to tow the vehicle. It further suggests that the court improperly determined that, because the defendant was not under arrest, he should have been given an opportunity to remove personal possessions from the vehicle before the inventory was conducted. In evaluating the Commonwealth's arguments, we view the evidence under the proper legal standard, in light of the specific language in the applicable sheriff's office policy and the findings made by the circuit court. We hold that the evidence, so viewed, supports the ruling that the decision to impound the vehicle was unreasonable under the Fourth Amendment. Therefore, we affirm the suppression of the evidence without reaching the Commonwealth's second assignment of error.[6]

---

[6] Either of the challenged conclusions would independently support the circuit court's suppression ruling. Because we uphold the first challenged basis, we do not consider the second one. See, e.g., McGhee v. Commonwealth, 280 Va. 620, 626 n.4, 701 S.E.2d 58, 61 n.4 (2010).

On appeal of an order granting a defendant's motion to suppress, the Commonwealth has the burden to show that the ruling constituted reversible error. See Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002). Whether a warrantless seizure violated the Fourth Amendment presents a mixed question of law and fact. Id. This Court gives deference to the circuit court's factual findings and independently determines whether the manner in which the evidence was obtained violated the Fourth Amendment. Id. The trial court is not required to make explicit findings of fact. If it does not, the Court views the evidence in the light most favorable to the prevailing party, here the defendant, granting to the evidence all reasonable inferences fairly deducible from that evidence. See Satchell v. Commonwealth, 20 Va. App. 641, 648, 460 S.E.2d 253, 256 (1995) (*en banc*). Whether impoundment of a vehicle was reasonable, like other Fourth Amendment determinations of reasonableness, is ultimately a legal issue reviewed *de novo* on appeal. See Butler v. Commonwealth, 31 Va. App. 614, 617, 525 S.E.2d 58, 59 (2000).

The Fourth Amendment's "community caretaking doctrine" permits law enforcement to impound a vehicle and inventory its contents under certain circumstances. King v. Commonwealth, 39 Va. App. 306, 309-10, 572 S.E.2d 518, 520 (2002) (citing South Dakota v. Opperman, 428 U.S. 364 (1976); Cady v. Dombrowski, 413 U.S. 433 (1973)). The analysis involves two separate inquiries: whether the impoundment was lawful and, if so, whether the inventory search was lawful. Id. at 311, 572 S.E.2d at 520; see Servis v. Commonwealth, 6 Va. App. 507, 520-21, 371 S.E.2d 156, 163 (1988).

This appeal turns on the reasonableness of the impoundment rather than the inventory. An impoundment is reasonable under the Fourth Amendment if it occurs pursuant to a statute or

standard police procedures and is not a pretext concealing an investigatory motive.[7] Williams v. Commonwealth, 42 Va. App. 723, 731, 594 S.E.2d 305, 309 (2004); see United States v. Sawyer, 441 F.3d 890, 897 (10th Cir. 2006) (recognizing impoundment authorized by statute). The purpose of the requirement that the impoundment must occur pursuant to standard procedures is to "circumscribe the discretion of individual officers." See Colorado v. Bertine, 479 U.S. 367, 376 n.7 (1987) (applying this principle to inventory searches). This requirement alerts each officer to "the constitutionally permissible limits of conduct in a given situation" and helps minimize the risk that an impoundment is pretextual. People v. Toohey, 475 N.W.2d 16, 23, 25 (Mich. 1991). The requirement does not mean that officers may not exercise *any* discretion. Bertine, 479 U.S. at 375. It means simply that the discretion must be exercised "according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." Id. Additionally, within the discretion provided, the Fourth Amendment does not require officers to choose the least intrusive means available. Hogan v. Commonwealth, 15 Va. App. 355, 364, 423 S.E.2d 841, 847 (1992).

Suitable criteria for inclusion in an impoundment policy may provide, for example, that when the owner of a vehicle has been arrested, the officer must consider "the feasibility and appropriateness of parking and locking a vehicle rather than impounding it." Bertine, 479 U.S. at

---

[7] The Commonwealth contends that the court applied an incorrect legal standard because it found that the deputy did not "need" to impound the vehicle. See Williams v. Commonwealth, 42 Va. App. 723, 731, 594 S.E.2d 305, 309 (2004) (recognizing that the proper overarching Fourth Amendment standard is reasonableness rather than need). The Commonwealth, however, did not raise this issue at a time when the circuit court still had an opportunity to explain or clarify its ruling. See, e.g., Commonwealth v. Bakke, 46 Va. App. 508, 516-17, 620 S.E.2d 107, 111 (2005) (motion to reconsider). Further, under the presumption that the court knows the law absent clear evidence to the contrary, we reach a different conclusion. See, e.g., Craddock v. Commonwealth, 40 Va. App. 539, 547, 580 S.E.2d 454, 458 (2003). We presume that the court's finding regarding "need" related to its assessment of whether the impoundment occurred pursuant to standard police procedures and its conclusion that there was no need to tow *under the policy*. This supports the further conclusion that the impoundment was unreasonable under the overarching Fourth Amendment standard. Finally, as a matter of law, under the proper standard, the ruling suppressing the evidence was not error on the facts of this case. See Banks v. Commonwealth, 280 Va. 612, 618, 701 S.E.2d 437, 440-41 (2010).

375-76. Those standard criteria may provide further that parking and locking is not a suitable option "where there is reasonable risk of damage or vandalism to the vehicle or where the approval of the arrestee cannot be obtained." Id. at 376 n.7.

Here, the circuit court examined the "number of different scenarios" addressed by the sheriff's office policy and found that none of them applied. It observed that the case involved "a vehicle in a parking space." Of the specific scenarios listed in paragraph 4's "Towing Situations," only one was potentially applicable in this case. Paragraph 4(e) provides that in the case of a vehicle "blocking a driveway or parking area, or obstructing or interfering with the movement on any driveway or parking area without the land owner's permission," an officer may impound and tow the vehicle at the owner's expense.[8] The circuit court expressly found that the defendant's vehicle was in a marked parking space on the convenience store property that Tuesday morning. It further found that no evidence indicated that the vehicle was "improperly parked, blocking access or interfering with the flow of traffic." Finally, it found a lack of evidence indicating whether the store was open or closed or whether anyone asked the property owner if the vehicle could be left there until the defendant, who was not being detained or arrested, could arrange to have it towed. These findings were not plainly wrong. Accordingly, the record establishes as a matter of law that none of

---

[8] Other provisions of paragraph 4 authorize towing vehicles in cases of accident, unauthorized presence at the scene of an emergency, impeding traffic, or because the vehicle is unattended or abandoned. Policy ¶ 4(a)-(c), (f)-(h). The Commonwealth does not argue that any of these provisions apply. Paragraph 4(i) states that an owner of private property, pursuant to Code § 46.2-1208, may act to tow a vehicle occupying a lot or space without permission. That code section, which requires notifying a law enforcement officer simultaneously with arranging for towing, was repealed in 2009, after the sheriff's office policy was last revised. See 2009 Va. Acts ch. 664. Consequently, it also does not apply.

the provisions of paragraph 4 rendered the decision to tow the defendant's vehicle reasonable under the Fourth Amendment. [9]

The Commonwealth argues that the vehicle was subject to impoundment because it was "rendered inoperable" as a result of being uninsured. In support of its argument, it relies on more general language in paragraphs 2 and 3(d) of the policy.

The Commonwealth characterizes paragraph 2 of the policy as authorizing towing whenever the vehicle's owner "is in violation of specific laws or ordinances." Policy ¶ 2. Relying on the provisions of Code §§ 46.2-707 and -711, it contends that the lack of liability insurance required the deputy to seize the vehicle's license plates and that this seizure of the plates also justified seizure of the vehicle by impounding and towing.

Paragraph 2's requirement is more explicit and exacting than the Commonwealth suggests. The general policy language relied upon by the Commonwealth is followed by clarifying statements that "the key . . . is the legality of the seizure" and the officer must be "acting under *statutory authority* to seize *the vehicle*." Policy ¶ 2 (emphases added). This is in keeping with the Fourth Amendment impoundment principles already outlined. Further, the statutes upon which the Commonwealth relies as part of this argument justified, at most, the seizure of the vehicle's license plates. Code § 46.2-706 provides that the Department of Motor Vehicles (DMV) must suspend the driver's license, registration, and license plates of the owner of a motor vehicle that is uninsured and

---

[9] Unlike in some other jurisdictions, the applicable Hanover County policy does not specifically authorize towing in the case of driving with defective equipment or driving without insurance. See Fisher v. Commonwealth, 42 Va. App. 395, 402-05, 592 S.E.2d 377, 380-81 (2004) (involving a policy permitting impoundment for defective equipment); see also United States v. Penn, 233 F.3d 1111, 1112 & n.2 (9th Cir. 2000) (involving a policy requiring towing upon issuing a citation for "driving uninsured" unless certain limited exceptions applied).

for which the owner has not paid the uninsured motor vehicle fee.[10]  Code § 46.2-707 requires that

the owner of such a vehicle "shall immediately surrender the . . . license plates" to the DMV.  Here,

once the deputy seized the license plates pursuant to these code sections, the defendant's vehicle

could not be lawfully operated.  See Code § 46.2-711(E).  However, the statute preventing lawful

operation of a vehicle without license plates does not also provide authority to impound the vehicle

itself.  See Howe v. State, 39 S.W.3d 467, 473 (Ark. Ct. App. 2001); cf. United States v. Gillon, 348

F.3d 755, 760 (8th Cir. 2003) (upholding an impoundment specifically authorized by statute in

conjunction with issuing a citation for a second offense of driving without insurance).  Absent such

a statutory provision, paragraph 2 of the policy does not support the Commonwealth's argument

that the impoundment was reasonable.

The Commonwealth also relies on the language in paragraph 3(d) of the policy, which

provides generally that "[t]here may be limiting or mitigating circumstances where the exercise of

discretion would indicate that towing is in the best interest of the driver and the [sheriff's office]."  It

argues that this provision is not standardless or overly vague because it may be informed by other

provisions of the policy, such as subdivisions (g), (h), and (i) of paragraph 4.  Paragraph 4(g) and

(h), the Commonwealth points out, relate to the authority to tow unattended and abandoned

vehicles.  These subdivisions, however, state that the vehicle must have been "left unattended" or

"abandoned" on public property.  They also require proof either that the vehicle has been present for

a period of more than forty-eight hours or that other specified circumstances tend to indicate an

intent to abandon.  The vehicle here was not on public property.  It also had not been left unattended

or abandoned.  The defendant had pulled into the marked parking space in direct response to the

---

[10] The defendant argues that the evidence did not prove the seizure of the license plates was proper because it did not establish that he had failed to pay the uninsured motor vehicle fee in lieu of maintaining liability insurance.  Because we conclude that the Commonwealth's argument on this point fails as a matter of law, we need not consider the defendant's assertion that the factual premise underpinning the argument is faulty.

deputy's signal. The deputy did not arrest the defendant prior to the impoundment, and the impoundment occurred as a part of the traffic stop while the defendant remained present. Thus, no evidence indicated that the defendant intended to abandon his car. Paragraph 4(i), discussed *supra* at note 8, recognized the authority of the owner of private property, pursuant to a statute that is no longer in effect, to tow a vehicle present without the vehicle owner's permission.

None of the provisions referenced from paragraph 4 applied directly, and the Commonwealth does not contend otherwise. We conclude that paragraph 3(d) does not permit the Commonwealth to do indirectly, by analogy to paragraphs 4(g), (h) or (i), that which it cannot do directly under paragraph 4.

We further hold that the evidence, viewed under the proper standard, supports the finding that the Commonwealth failed to prove that impounding the vehicle was "in the best interest of the driver and the [sheriff's office]." Policy ¶ 3(d). Regarding the interest of the defendant, the evidence established that he was the undisputed owner of the vehicle, and he "was not taken into custody or removed from the scene." See King, 39 Va. App. at 312, 572 S.E.2d at 521. Instead, the deputy merely took custody of the license plates. Although the defendant could not drive the vehicle from the scene because his license was suspended and the vehicle's license plates had been seized, "the evidence failed to show [that the defendant] was unable to arrange for [the vehicle's] removal to another location[] or to safeguard his property." See id. To the contrary, "the record shows that the police made no inquiry regarding [the defendant's] ability to make arrangements to have the car . . . moved." See id. Finally, towing by the sheriff's office, pursuant to the policy, was by the next towing service in the rotation and at the defendant's expense. See Policy ¶¶ 4, 5(b), 9, 10. If the defendant had been given the opportunity to make his own arrangements for the vehicle, he could have shopped for a competitively priced towing service. See generally Alviso v. Sonoma Cnty. Sheriff's Dept., 111 Cal. Rptr. 3d 775, 786 (Cal. Ct. App. 2010) (recognizing an owner's

interest in avoiding the cost and disruption of impoundment). In addition, he was present, not under detention or arrest, and able to address with the store's management how long he might be permitted to leave his vehicle in the store's lot while attempting to resolve the insurance issue or arranging to have the vehicle towed. See United States v. Bridges, 245 F. Supp. 2d 1034, 1037 (S.D. Iowa 2003) (recognizing that the defendant, whose vehicle was parked in a marked space at a convenience store, was not in custody and was available "to deal with [store employees] about parking in their lot"). Thus, the record supports a finding that towing was not in the best interest of the defendant.

Regarding the best interest of the sheriff's office, the policy begins by expressly stating that towing is generally not in its best interest, providing that the "towing of vehicles should be avoided whenever practicable." Policy ¶ 2. This stands in marked contrast to the policies of some other localities. See, e.g., King, 39 Va. App. at 307, 572 S.E.2d at 519 (noting that impoundment was "highly recommended" under the applicable Arlington County policy). Paragraph 7, which provides that "[n]either the county nor the individual officer shall be held liable for any damage to, theft of, or theft from a vehicle when the owner/driver has elected not to move the vehicle," supports the policy's stated preference to avoid towing. Augmenting paragraph 7 is the policy's appendix A, waiver language designed to protect the county by releasing it from liability for any damage that might befall a vehicle or its contents in exchange for allowing the owner to leave the vehicle parked at the scene. See also Policy ¶ 5(a) (stating that "[p]rior to towing a vehicle subject to this order, the driver shall be afforded a reasonable opportunity, predicated on the circumstances, to provide for the removal of the vehicle within a reasonable length of time," which may include "park[ing] and lock[ing], if lawful and not a hazard"). Further, the traffic stop of the defendant's car occurred at 9:00 a.m., and in addition to the fact that the defendant was present to protect his property, no evidence in the record indicated the neighborhood was unsafe or that the car contained

- 11 -

anything of value in plain view that was likely to encourage theft or present a danger to others. See

King, 39 Va. App. at 312, 572 S.E.2d at 521. Thus, the evidence supports the circuit court's

rejection of the Commonwealth's argument that the deputy was entitled to tow the car to protect the

county from liability that might arise if the vehicle was allowed to remain in place but was later

towed by the owner of the premises, resulting in loss of or damage to the vehicle or its contents.

Finally, the evidence supported a finding that any risk to the sheriff's office based on

possible liability to third parties was also minimal. See generally Alviso, 111 Cal. Rptr. 3d at 786

(recognizing the government's interest in keeping dangerous drivers off the road). As discussed

*supra*, the record contains no indication that the vehicle was inherently unsafe to third parties based

on where it was parked. Additionally, no evidence beyond the fact that the defendant was

knowingly driving without insurance at the time of the stop indicated that he was likely to operate

the vehicle again, or to allow someone else to do so, prior to remedying the insurance issue. This is

highlighted by the fact that the deputy expressed no intention even to issue him a summons for that

offense pursuant to Code § 46.2-707. Further, the deputy removed and seized the vehicle's license

plates, making the vehicle's legal inoperability more readily apparent and increasing the deterrent

effect due to the likelihood of detection if the defendant did permit the car to be driven prior to

remedying the insurance and licensing issue. The circuit court, by concluding that the policy did not

support towing on the facts of this case, found that the evidence did not show that the defendant was

likely to move the vehicle in a manner that violated the law. Cf. Fisher v. Commonwealth, 42

Va. App. 395, 402-05, 592 S.E.2d 377, 380-81 (2004) (holding that the evidence supported

impoundment under a local policy providing discretion over a vehicle with defective equipment,

where the officer could not determine why the defendant's vehicle bore a rejection sticker and the

defendant admitted that after receiving at least four citations for driving with a rejection sticker, he

removed the sticker and continued to drive the car).  This finding was not plainly wrong on the facts of this case.

Thus, the evidence supported a finding that, on the specific facts of this case, towing the vehicle was not "in the best interest of the driver and the [sheriff's office]," as required to permit impoundment under paragraph 3(d).

In sum, we conclude that the impoundment did not occur pursuant to standard police procedures.  As found by the circuit court, nothing in paragraphs 2, 3(d) or 4 of the applicable Hanover County policy, or in the licensing and insurance statutes the Commonwealth cites as relevant in interpreting paragraph 2, authorized impoundment of the car on the facts of this case.  In addition, the Commonwealth cited no other policy provisions or statutes under which it contended that the sheriff's office had the authority to impound the defendant's vehicle.

### III.  CONCLUSION

Based on the record before us, we conclude that the impoundment did not occur pursuant to a statute or the standard police procedures applicable in this case.  Thus, the impoundment was not reasonable under the Fourth Amendment.  Accordingly, without reaching the Commonwealth's second assignment of error, we affirm the ruling granting the defendant's motion to suppress and remand the case, consistent with this opinion.

Affirmed.